**E-FILED**
Friday, 13 October, 2006  02:54:18 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 PENSION FUND and CEMENT MASONS LOCAL #18, AREA #539 APPRENTICESHIP AND TRAINING FUND, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | |
| vs. | ) | No. |
| | ) | |
| J. P. PHILLIPS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COME Plaintiffs, OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 PENSION FUND and CEMENT MASONS LOCAL #18, AREA #539, APPRENTICESHIP AND TRAINING FUND, by and through its attorneys, Cavanagh & O'Hara, complaining of the Defendant, J. P. PHILLIPS, INC., and allege as follows:

1.      This action arises under the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1145.

2.      The Plaintiffs are employee benefit funds administered pursuant to the terms and provisions of certain declarations of trusts creating said Funds and said Funds are required to be maintained and administered in accordance with the provisions of the Labor Management Relations Act of 1947, and ERISA (as amended), 29 U.S.C. §§1001 *et seq.* The address and place of business of the Plaintiffs is the Operative Plasterers and Cement Masons Funds, c/o Quorum Consulting, 3101 Greenhead Drive, Springfield, Illinois 62711.

1

3.      The Defendant's address is Franklin Park, Illinois.

4.      That Core Construction is a signatory contractor to the Capital Development Board

Project Labor Agreement (the "PLA") which states in pertinent part as follows:

"The Contractor agrees to be bound by the terms of the Collective Bargaining Agreements and amendments thereto of the affiliates of the PLA Committee and the applicable employers association, if any.  Such agreements are incorporated herein by reference." (Section 1.2 of the PLA).

"The Contractor agrees that neither he nor any of his subcontractors will subcontract any work to be done on the project except to a person, firm or corporation party signatory to this Agreement."    (Section 9.1 of the PLA).

"Any Contractor or Sub-contractor working on the project covered by this Agreement shall as a condition to working on said project, become signatory to and perform all work under the terms of this Agreement."    (Section 9.2 of the PLA).

The PLA is attached hereto and incorporated herein as **Exhibit A**.

5.      Core Construction subcontracted with Defendant, J.P. PHILLIPS, INC., to perform

certain plasterer work at the Illinois State Capitol in Springfield, Illinois.  Accordingly, the

Defendant, J.P. PHILLIPS, INC., adopted the PLA and the applicable labor agreements of the

Plaintiffs incorporated by reference into the PLA.

6.      The applicable labor agreements require that the Defendant, J. P. PHILLIPS, INC.,

pay fringe benefit contributions to Plaintiffs for covered plastering work under the PLA.

7.      The Defendant, J. P. PHILLIPS, INC., did perform  covered plasterers' work at the

State Capitol, but failed to pay fringe benefit contributions to Plaintiffs.  In a recent decision under

the PLA , Arbitrator Glenn A. Zipp's held as follows:

"[i]n accord with my above findings and decisions, the Arbitrator finds that the disputed plastering work was mis-assigned to BAC Local 8 by the Responsible Employer.  The disputed work at issue in this jurisdictional dispute is hereby assigned to the craftsmen/members of OPCA Local 18."

2

The Arbitrator's decision is attached hereto and incorporated herein as **Exhibit B**.

8.      That pursuant to the terms of the Restated Agreement and Declaration of Trust and ERISA, 29 U.S.C. §(g)(2)), the Defendants are liable for reasonable attorney's fees and court costs and all other reasonable expenses incurred by the Funds in collection of delinquent contributions, including liquidated damages.

9.      Attached hereto and incorporated herein as **Exhibit C** is the Affidavit of James P. Moody in support of his request for attorney's fees incurred in the prosecution of this matter.

WHEREFORE, Plaintiffs pray as follows:

A.      Judgment in favor of Plaintiffs and against the Defendant for delinquent contributions, liquidated damages and interest owed for the covered work performed under the PLA.

B.      That Defendant  be decreed to pay to Plaintiffs its reasonable attorney fees in the amount of $886.50 as provided by ERISA, 29 U.S.C. §1132(g)(2), and Plaintiffs' Restated Agreements and Declarations of Trust.

C.      That Plaintiffs be awarded such other and further relief as the Court deems just and equitable, all at Defendant's cost.

Respectfully submitted,
OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 PENSION FUND and CEMENT MASONS LOCAL #18, AREA #539 APPRENTICESHIP AND TRAINING FUND,
Plaintiffs,


By: ____s/ James P. Moody_____
    JAMES P. MOODY
    **CAVANAGH & O'HARA**

3

407 East Adams
P. O. Box 5043
Springfield, IL  62705
Telephone:  (217) 544-1771
Facsimile:  (217) 544-5236
jim@cavanagh-ohara.com

**CAPITAL DEVELOPMENT BOARD**
**STANDARD PROJECT LABOR AGREEMENT**

This Agreement is entered into this _____ day of _____, 2005, by and between the Capital Development Board and the **AFL-CIO Project Labor Agreement Committee (PLA Committee)** for and on behalf of its affiliated members, hereinafter referred to individually and collectively, as the "Union". This Agreement shall apply to work performed by the Employer and its Contractors and Subcontractors on Construction know as the **CDB Project No. 006-100-004, Upgrade HVAC System, Capitol Building, Springfield, Illinois.**

## ARTICLE 1 - INTENT AND PURPOSES

1.1    It is mutually understood that the following terms and conditions relating to employment of workmen covered by this Agreement have been written in order to promote efficiency of construction operations and provide for peaceful settlement of labor disputes without strikes or lockouts, thereby promoting the public interest in assuring the timely and economical completion of the work. It is also the intent of the parties to set out standard working conditions for the efficient prosecution of said construction work, herein to establish and maintain harmonious relations between all parties of the Agreement, to secure optimum productivity and to eliminate strikes, lockouts, or delays in the prosecution of the work.

(a)    Therefore, the following provisions will be binding upon _____ and all its sub-contractors (hereinafter jointly referred to as "Contractor"), who shall be required to sign the "Participation Agreement", attached hereto as "Schedule A", and the Unions during the term of this Agreement and any renewal thereafter. The Unions hereby consent to apply the terms and conditions of this Project Agreement to said sub-contractors upon their signing the "Participation Agreement". It is understood that each sub-contractor will be considered and accepted by the Unions as a separate employer for the purposes of collective bargaining. It is further agreed that the employees working under this Agreement shall constitute a bargaining unit separate and distinct from all others. This Agreement may be modified by mutual consent in writing by the parties signatory hereto.

1.2    The Contractor agrees to be bound by the terms of the Collective Bargaining Agreements and amendments thereto of the affiliates of the **PLA Committee** and the applicable employers association, if any. Such agreements are incorporated herein by reference. In order to comply with the requirements of the various fringe benefit funds to which the Contractor is to contribute, the Contractor shall sign such participation agreements as are necessary. Upon written notice from any fringe benefit fund C.D.B. will withhold payment of delinquencies occurring on this project from the involved Prime Contractors.

1.3    It is mutually understood that where the provisions of this Agreement are at variance with any other agreement between the Contractor and the Union, the language of this Agreement shall prevail.

1.4    The Contractor and the Union agree that should the Collective Bargaining Agreement (CBA) of any **PLA Committee**. Affiliate signatory to this Agreement expire prior to the completion of this project, the expired contracts' terms will be maintained until a new CBA is ratified. The wages, and fringe benefits included in any new CBA will be effective on the effective date of the newly negotiated C.B.A. unless wage and fringe benefit retroactivity is agreed upon by the bargaining parties.

## ARTICLE II - RECOGNITION

2.1    The Contractor recognizes the PLA Committee and the signatory affiliates as the sole and exclusive bargaining representatives for its craft employees employed on the jobsite. PLA Committee



*Upgrade HVAC System*
*Springfield Capitol Building*

**EXHIBIT**
**A**

*CDB PROJECT No. 006-100-004*
*July 1, 2005*

affiliates signatory to this Agreement will have recognition on the project for their craft.

## ARTICLE III - ADMINISTRATION OF AGREEMENT

3.1    In order to assure that all parties have a clear understanding of the Agreement, to promote harmony and address potential problems, a pre-job conference will be held with the Contractor, PLA Committee Representatives and all signatory parties prior to the start of any work on the project.

3.2    Representatives of the Contractor and the Unions shall meet as required but not less than once a month to review the operation of this Agreement. The representatives at this meeting shall be empowered to resolve any dispute over the intent and application of the Agreement.

3.3    The Contractor shall make available in writing to the Unions and Council no less than one week prior to these meetings a job status report, planned activities for the next 30 day period, actual numbers of craft employees on the project and estimated numbers of employees by craft required for the next 30 day period. The purpose of this report is to allow time to address any potential jurisdictional problems and to ensure that no party signatory to the Agreement is hindering the continuous progress of the project through a lack of planning or shortage of manpower.

## ARTICLE IV - HOURS OF WORK OVERTIME SHIFTS & HOLIDAYS

4.1    The standard work day shall be an established consecutive eight (8) hour period between the hours of 7:00 a.m. and 5:00 p.m. with one-half hour designated as unpaid period for lunch. The standard work week shall be five (5) consecutive days of work commencing on Monday. Starting time which is to be established at the pre-job conference will be applicable to all craft employees on the project. Should job conditions dictate a change in the established starting time and/or a staggered lunch period on certain work of the project or with individual crafts, the Contractor, Business Managers of the crafts involved and the PLA Committee shall mutually agree to such changes. If work schedule change cannot be mutually agreed to between these parties, the hours fixed in the Agreement shall prevail.

4.2    All time before and after the established work day of eight (8) hours, Monday through Friday and all time on Saturday shall be paid in accordance with each crafts current collective bargaining agreement. All time on Sundays and Holidays shall be paid for at the rate of double time.

      (a)    Fringe benefit payments for all overtime work shall be paid in accordance with each craft's Current collective Bargaining Agreement.

4.3    Shift work, if used, shall be as provided in the collective bargaining agreement of each affected craft.

4.4    Recognized Holidays shall be as follows: New Year's Day, Memorial Day, Fourth of July, Labor Day, Veterans Day (to be celebrated the day after Thanksgiving), Thanksgiving Day and Christmas Day. No work will be performed on Labor Day under any consideration, except in an extreme emergency and then only after consent is given by the Business Manager.

## ARTICLE V - ABSENTEEISM

5.1    The Contractor and the Union agree that the chronic and/or unexcused absenteeism is undesirable and must be controlled. Employees that develop a record of such absenteeism shall be identified by the Contractor to the appropriate referral facility and the Contractor shall support such action with the work record of the involved employee. Any employee terminated for such absenteeism shall not be eligible for rehire on the project for a period of no less than ninety (90) days.

*Upgrade HVAC System*
*Springfield Capitol Building*

*CDB PROJECT No. 006-100-004*
*July 1, 2005*

ARTICLE VI - MANAGEMENT RIGHTS

6.1    The Contractor retains and shall exercise full and exclusive authority and responsibility for the management of its operations, except as expressly limited by the terms of this Agreement and the Unions collective bargaining agreement.

## ARTICLE VII - GENERAL WORKING CONDITIONS

7.1    Employment begins and ends at the project site, to be determined at the Pre-Job Conference.

7.2    Employees shall be at their place of work at the starting time and shall remain at their place of work until quitting time.  The parties reaffirm their policy of a fair days work for a fair days pay.

7.3    The Contractor may utilize brassing, or other systems to check employees in and out. Should such procedures be required, the techniques and rules regarding such procedures shall be established by mutual consent of the parties at the pre-job conference.

7.4    There shall be no limit on production by workmen nor restrictions on the full use of tools or equipment.  Craftsmen using tools shall perform any work of their trade and shall work under the direction of the craft foreman.  There shall be no restrictions on efficient use of manpower other than as may be required by safety regulations.

7.5    Crew Foreman shall be utilized as per the existing collective bargaining agreements.  The Contractor agrees to allow crew foremen ample time to direct and supervise their crew.  The Union agrees there will be no restrictions placed on crew foreman's ability to handle tools and materials.

7.6    The Contractor may utilize the most efficient methods or techniques of construction, tools or other labor saving devices to accomplish the work.  Practices not a part of the terms and conditions of this Agreement will not be recognized.

7.7    Should overtime work be required, the Contractor will have the right to assign specific employees and/or crews to perform such overtime work as is necessary to accomplish the work.

7.8    The Contractor may establish such reasonable project rules as the Contractor deems appropriate.  These rules will be reviewed and established at the pre-job conference and posted at the project site by the Contractor.

7.9    It is recognized that specialized or unusual equipment may be installed on the project and in such cases, the Union recognizes the right of the Contractor to involve the equipment supplier or vendor's personnel in supervising the setting of the equipment, making modifications and final alignment which may be necessary prior to and during the start-up procedure, in order to protect factory warranties.

7.10    In order to promote a harmonious relationship between the equipment or vendor's personnel and the Building Trades craftsmen, a meeting shall be held between the Contractor and the Unions prior to any involvement on the project by these personnel.  The Contractor will inform the Unions of the nature of involvement by these personnel and the numbers of personnel to be involved, allowing ample time for the Union representatives to inform their stewards prior to the start of any work.

## ARTICLE VIII - SAFETY

*Upgrade HVAC System*
*Springfield Capitol Building*

*CDB PROJECT No. 006-100-004*
*July 1, 2005*

8.1   The employees covered by the terms of this Agreement shall at all times while in the employ of the Contractor be bound by the safety rules and regulations as established by the Contractor in accordance with the Construction Safety Act and OSHA.

    (a)   These rules and regulations will be published and posted at conspicuous places throughout the project.

8.2   In accordance with the requirements of OSHA, it shall be the exclusive responsibility of each Contractor on a jobsite to which this Agreement applies, to assure safe working conditions for its employees and compliance by them with any safety rules contained herein or established by the Contractor.  Nothing in this Agreement will make the PLA Committee or any of its affiliates liable to any employees or to other persons in the event that injury or accident occurs.

## ARTICLE IX - SUBCONTRACTING

9.1   The Contractor agrees that neither he nor any of his subcontractors will subcontract any work to be done on the project except to a person, firm or corporation party signatory to this Agreement.

9.2   Any Contractor or Sub-contractor working on the project covered by this Agreement shall as a condition to working on said project, become signatory to and perform all work under the terms of this Agreement.  The furnishing of materials, supplies or equipment and the delivery thereof shall be in no case considered subcontracting.

## ARTICLE X - UNION REPRESENTATION

10.1   Authorized representatives of the PLA Committee and its signatory affiliates shall have access to the project provided they do not interfere with the work of the employees and further provided that such representatives fully comply with the visitor and security rules established for the project.

10.2   Each PLA Committee affiliate which is a party to this Agreement, shall have the right to designate a working journeyman as a steward.  Such designated steward shall be a qualified worker performing the work of that craft and shall not exercise any supervisory functions. Each steward shall be concerned with the employees of the steward's employer and not with the employees of any other employer.

10.3   The working steward will be paid at the applicable wage rate for the job classification in which he is employed.

10.4   The working steward shall not be discriminated against because of his activities in performing his duties as steward, and except as otherwise provided in local agreements, shall be the last employee in his craft to be laid off in any reduction in force.  Stewards will be subject to discharge to the same extent that other employees are only after notification to the Union Representative. The Contractor will permit stewards sufficient time to perform the duties inherent to a steward's responsibilities. Stewards will be offered available overtime work if qualified.

## ARTICLE XI - GRIEVANCE AND ARBITRATION PROCEDURES

11.1   It is specifically agreed that in the event any disputes arises out of the interpretation or application of this Agreement, excluding jurisdictional disputes which are covered by an expedited procedure in Article XII below, the same shall be settled by means of the procedure set out herein upon mutual agreement of the parties.  Otherwise, the procedure set forth in the local collective bargaining agreement shall be used, but in no case shall both procedures be utilized to resolve such disputes.  No

Union by the Contractor within five (5) working days after the alleged violation was committed or discovered by the grieving party.

11.2    Grievances shall be settled according to the following procedure:

(a)    Step 1.  The dispute shall be referred to the Steward of the craft union involved and a representative of the Contractor at the construction project.

(b)    Step 2.  In the event that the steward and the Contractor's representative at the construction site cannot reach agreement within two (2) working days after a meeting is arranged and held, the matter shall be referred to the Union Business Manager, a representative of the PLA Committee and the Project Superintendent and/or Project Manager.

(c)    Step 3.  In the event the dispute is not resolved within five (5) working days after completion of Step 2, these two shall request a panel of arbitrators from the U.S. Mediation and Conciliation Service for selection of an impartial arbitrator who shall hear the grievance and make a decision within ten (10) working days which shall be final and binding on all parties.  The parties shall each pay the expense of their own representative. The decision of the arbitrator shall be binding upon all parties.  The expense of the impartial arbitrator shall be borne equally by the Contractor and the involved craft Union.

## ARTICLE XII - JURISDICTIONAL DISPUTES

12.1    As used in this Agreement, the term "jurisdictional dispute" shall be defined as any dispute, difference or disagreement involving the assignment of particular work to one class or craft of employees rather than to a different class or craft of employees, regardless of that Contractor's contractual relationship to any other employer, contractor, or organization on the site.

12.2    It is agreed by and between the parties to this Agreement that any and all jurisdictional disputes shall be resolved in the following manner; each of the steps hereinafter listed shall be initiated by the parties in sequence as set forth:

(a)    Negotiation by and between the Local Business Representative of the disputing Union and Employer shall take place within two (2) business days.  Business days are defined as Monday through Friday excluding contract holidays.  Such negotiations shall be pursued until it is apparent that the dispute cannot be resolved at the local level.

(b)    The International Representatives of the disputing Union shall meet or confer and attempt to resolve said dispute.  This meeting shall take place within two (2) business days.  Business days are defined as Monday through Friday excluding contract holidays.

(c)    The parties to the Jurisdictional Dispute shall submit the dispute directly to an Arbitrator after complying with paragraph (2b) above.  The parties shall meet with the Arbitrator within three (3) business days.  Business days are defined as Monday through Friday excluding contract holidays.  An Arbitrator will be selected based on availability from the slate of permanent Arbitrators.  The Arbitrator's bench decision will be given the day of the hearing and will be final and legally binding on this project only.  The Arbitrator's bench decision will be

implemented without delay. The cost of Arbitration will be shared equally by the disputing parties. Any party to the dispute can require that a "long form" written decision be provided from the Arbitrator, however the cost of the "long form" written decision will be the responsibility of the party making the request.

Note:
- A jurisdictional dispute may be submitted based upon a pre-job assignment.
- If any party to the jurisdictional disputes does not fully comply with the steps and time limits with each step, then the party in non-compliance will lose by "automatic default".
- Time limits at any step can be extended if all parties to the jurisdictional dispute mutually agree in writing.
- All parties to a jurisdictional dispute can mutually agree to waive the time limits in steps (a) and (b) and proceed directly to an expedited arbitration hearing.

(d)    In rendering his decision, the Arbitrator shall determine:

(1)    First whether a previous agreement of record or applicable agreement, including a disclaimer agreement, between the National or International Unions to the dispute governs;

(2)    Only if the Arbitrator finds that the dispute is not covered by an appropriate or applicable agreement of record or agreement between the crafts to the dispute, he shall then consider whether there is a previous decision of record governing the case;

(3)    If the Arbitrator finds that a previous decision of record governs the case, the Arbitrator shall apply the decision of record in rendering his decision except under the following circumstances. After notice to the other parties to the dispute prior to the hearing that it intends to challenge the decision of record, if a trade challenging the decision of record is able to demonstrate that the recognized and established prevailing practice in the locality of the work has been contrary to the applicable decision of record, and that historically in that locality the work in dispute has not been performed by the other craft or crafts, the Arbitrator may rely on such prevailing practice rather than the decision of record. If the craft relying on the decision of record demonstrates that it has performed the work in dispute in the locality of the job, then the Arbitrator shall apply the decision of record in rendering his decision. If the Arbitrator finds that a craft has improperly obtained the prevailing practice in the locality through raiding, the undercutting of wagers or by the use of vertical agreements, the Arbitrator shall rely on the decision of record rather than the prevailing practice in the locality.

(4)    If no decision of record is applicable, the Arbitrator shall then consider the established trade practice in the industry and prevailing practice in the locality; and

(5)    Only if none of the above criteria is found to exist, the Arbitrator shall then consider that because efficiency, cost or continuity and good

management are essential to the well being of the industry, the interest of the consumer or the past practice of the employer shall not be ignored.

(6)     The Arbitrator shall set forth the basis for his decision and shall explain his findings regarding the applicability of the above criteria. If lower-ranked criteria are relied upon, the Arbitrator shall explain why the higher-ranked criteria were not deemed applicable. The Arbitrator's decision shall only apply to the job in dispute.

(7)     Agreements of record are applicable only to the party's signatory to such agreements. Decision of record are applicable to all trades.

(8)     The Arbitrator is not authorized to award back pay or any other damages for a mis-assignment of work. Nor may any party bring an independent action for back pay or any other damages, based upon a decision of an Arbitrator.

12.3     The signatory parties to this Agreement agree that jurisdictional disputes cannot and shall not interfere with the efficient and continuous operations required for the successful application of this Agreement. In the event a dispute arises, the Contractor's assignment shall be followed until the dispute is resolved.

12.4     Equipment or material delivered to the job site will be unloaded promptly without regard to jurisdictional disputes which will be handled as per the provisions of this Agreement. The Contractor will supply the Union with delivery schedules, allowing as much time as possible to insure the appropriate crafts will be available to unload the materials or equipment.

12.5     All signatory affiliates agree that upon request, a representative shall be assigned without delay to attempt a settlement in the event of a question on assignments.

ARTICLE XIII - WORK STOPPAGES AND LOCKOUTS

13.1     During the term of this Agreement there shall be no strikes, picketing, work stoppages, slow downs are other disruptive activity for any reason by the PLA Committee, its affiliates or by any employee and there shall be no lockout by the Contractor. Failure of any Union or employee to cross any picket line established at the project site is a violation of this Article.

13.2     The PLA Committee and its affiliates shall not sanction, aid or abet, encourage or continue any work stoppage, picketing or other disruptive activity and will not make any attempt of any kind to dissuade others from making deliveries to or performing services for or otherwise doing business with the Contractor at the project site. Should any of these prohibited activities occur the Union will take the necessary action to end such prohibited activities.

13.3     No employee shall engage in any activities which violate this Article. Any employee who participates in or encourages any activities which interfere with the normal operation of the project shall be subject to disciplinary action, including discharge, and if justifiably discharged for the above reasons, shall not be eligible for rehire on the same project for a period of not less than ninety (90) days.

13.4     Neither the PLA Committee or its affiliates, shall be liable for acts of employees for which it has not responsibility. The principal officer or officers of the PLA Committee will immediately instruct, order and use the best efforts of his office to cause the affiliated union or unions to cease any violations of this Article. The PLA Committee in its compliance with this obligation shall not be liable

for unauthorized acts of its affiliates. The principal officer or officers of any involved affiliate will immediately instruct, order or use the best effort of his office to cause the employees the union represents to cease any violations of this Article. A union complying with this obligation shall not be liable for unauthorized acts of employees it represents. The failure of the Contractor to exercise its right in any instance shall not be deemed a waiver of its right in any other instance.

13.5    In lieu of any action at law or equity, any party shall institute the following procedure when a breech of this Article is alleged, after all involved parties have been notified of the fact.

(a)    The party invoking this procedure shall notify an individual to be mutually agreed upon, whom the parties agree shall be the permanent arbitrator under this procedure. In the event the permanent arbitrator is unavailable at any time, he shall appoint his alternate. Notice to the arbitrator shall be by the most expeditious means available, with notice by telegram or any effective written means to the party alleged to be in violation and all involved parties.

(b)    Upon receipt of said notice the arbitrator named above shall set and hold a hearing within twenty-four (24) hours if it is contended the violation still exists but not before twenty-four (24) hours after the telegraph notice to all parties involved as required above.

(c)    The Arbitrator shall notify the parties by telegram or any other effective written means, of the place and time he has chosen for this hearing. Said hearing shall be completed in one session. A failure of any party or parties to attend said hearing shall not delay the hearing of evidence or issuance of an Award by the Arbitrator.

(d)    The sole issue at the hearing shall be whether or not a violation of this Article has in fact occurred. The Award shall be issued in writing within three (3) hours after the close of the hearing, and may be issued without an Opinion. If any party desires an Opinion, one shall be issued within fifteen (15) days, but its insurance shall not delay compliance with, or enforcement of, the Award. The Arbitrator may order cessation of the violation of this Article, and such Award shall be served on all parties by hand or registered mail upon issuance.

(e)    Such Award may be enforced by any court of competent jurisdiction upon the filing of the Agreement and all other relevant documents referred to herein above in the following manner. Telegraphic notice of the filing of such enforcement proceedings shall be given to the other party. In the proceeding to obtain a temporary order enforcing the Arbitrator's Award as issued under Section 13.5 of this Article, all parties waive the right to a hearing and agree that such proceedings may be exparte. Such agreement does not waive any party's right to participate in a hearing for a final order of enforcement. The Court's order or orders enforcing the Arbitrator's Award shall be served on all parties by hand or by delivery to their last known address or by registered mail.

(f)    Any rights created by statue or law governing arbitration proceedings inconsistent with the above procedure or which interfere with compliance therewith are hereby waived by parties to whom they accrue.

(g)    The fees and expenses of the Arbitrator shall be borne by the party or parties found in violation, or in the event no violation is found, such fees and expenses shall be borne by the moving party.

*Upgrade HVAC System*
*Springfield Capitol Building*

*CDB PROJECT No. 006-100-004*
*July 1, 2005*

14.1    If any Article or provision of this Agreement shall be declared invalid, inoperative or unenforceable by operation of law or by any of the above mentioned tribunals of competent jurisdiction, the remainder of this Agreement or the application of such Article or provision to persons or circumstances other than those as to which it has been held invalid, inoperative or unenforceable shall not be affected thereby.

ARTICLE XV - TERM OF AGREEMENT

15.1    This Agreement shall be in full force as of and from the date of the Notice of Award to the Substantial Completion of all applicable contractors.

**SCHEDULE A**

# PARTICIPATION AGREEMENT

The undersigned, a subcontractor to _____ agrees to be bound to the attached Project Agreement negotiated between _____ and the PLA Committee.


_____          _____
Subcontractor                                By


_____
Date

## FOR THE AFL-CIO PROJECT LABOR AGREEMENT COMMITTEE:

**SIGNATURES REDACTED**

Jim Allen, President
Bricklayers

Michael T. Carrigan, Sec-Treasurer
Illinois AFL-CIO

Ed Christensen, Director
Elevator Constructors

Eric Dean, Int'l Representative
Iron Workers

Terry Fitzmaurice, Representative
IUPAT

Terrence Healy, Int'l Representative
LIUNA

Don Gorman, Executive Assistant
Carpenters

Terry Lynch, Int'l Representative
Asbestos Workers

Richard Mathis, President
Roofers

Donald Moss, Pres-Business Mgr
Cement Masons

Robert Paddock, Representative
IUOE State Council

John Skermont, Business Representative
Boilermakers

George Slater, President
Sheet Metal State Council

Lonnie Stephenson, Int'l Representative
IBEW

Dale Stewart, Representative
IL Conference of Teamsters

Stephen Toth, Int'l Representative
Plumbers & Pipe Fitters

## FOR THE CONTRACTORS:

GENERAL _____ Date

PLUMBING _____ Date

HEATING _____ Date

VENTILATING _____ Date

ELECTRICAL _____ Date

FIRE PROTECTION _____ Date

*Upgrade HVAC System*
*Springfield Capitol Building*

*CDB PROJECT No. 006-100-004*
*July 1, 2005*

RECEIVED AUG 14 2006

E-FILED
Friday, 13 October, 2006 02:54:43 PM
Clerk, U.S. District Court, ILCD

**In The Matter of Arbitration between:**

Operative Plasterers' & Cement Masons' International Association of the United States and
     Canada, AFL-CIO, Local 18,
         The Complaining Union

     And

International Union of Bricklayers & Allied Craftsmen, AFL-CIO, Local 8
        The Defending Union

     And

JP Phillips, Inc., the Responsible Employer

**Before:** Arbitrator Glenn A. Zipp

**Appearances:**

**For OPCM Local 18:** Michael J. Gannon
**For BAC Local 8:**      Timothy J. Driscoll
**For the Employer:**    Michael Pilolla

**Jurisdictional Dispute under the Capital Development Board**
       **Standard Project Labor Agreement**

## DECISION

### PREFACE

A hearing in this matter of arbitration was held on August 8, 2006 at 1:00 pm at the Illinois AFL-CIO building located at 534 South Second Street, Springfield, Illinois. The undersigned Arbitrator was appointed to hear this matter under the provisions of Article XII (Jurisdictional Disputes) of the CDB Project Labor Agreement to which the above-captioned parties are bound. All parties were present and were afforded a full opportunity to present evidence, call and examine witnesses and make arguments in support of their respective positions. At the conclusion of the hearing the undersigned Arbitrator gave a bench decision with all parties present, as prescribed by Article XII, setting forth the basis for his findings and conclusions in accordance with Article 12.2(d)(6). The Arbitrator found that under the criteria of Article XII the disputed work was mis-assigned, and awarded the work to the craftsmen of OPCA Local 18th. That award remains effective as of August 8th notwithstanding the issuance of this "long form" written decision which was requested under the provisions of Article 12.2 (c). The provisions of Article XXII of the PLA are attached to this decision.



## THE WORK IN DISPUTE (JURISDICTIONAL ISSUE)

It was stipulated at the hearing that the disputed work assignment is the plastering work, including ornamental plastering and plastering repair and restoration work, at the State Capital Building CDB Project in Springfield, Illinois where CORE Construction is the General Contractor and the named Responsible Employer, JP Phillips, Inc. is a subcontractor. The hearing conducted in this matter pertains to this specific dispute. The jurisdictional issue addressed by the Arbitrator is whether this plastering is the work of craftsmen/members of BAC Local 8, which was given the assignment by JP Phillips, or that of the craftsmen/members of OPCA Local 18.

## BACKGROUND

On July 31, 2006 representatives of OPCA Local 18 became aware that the plastering work at the State Capital Building under the CDB project labor agreement (hereafter sometimes referred to as the PLA) had been assigned to BAC Local 8 and the plastering craftsmen it represents. Representatives of OPCA Local 18 thereafter timely contacted Mr. Pilolla of JP Phillips to negotiate a resolution in accordance with Article 12.2 (a) of the PLA. Its efforts were abruptly rebuffed with no real negotiation ensuing according to OPCA. On August 1st (all dates hereinafter unless stated otherwise refer to 2006) John J. Dougherty, General President of OPCA, faxed a letter to John Flynn, President of BAC, informing him that a jurisdictional dispute may exist between the involved locals over the plastering restoration work at the State Capital, and requested pursuant to Article 12.2 (b) that he assign a representative to meet with OPCA Vice President Michael Gannon. President Flynn replied by fax on August 1st advising that he had designated Timothy Driscoll, Director of Trade Jurisdiction, as BAC's representative in this matter. No meeting or personal contact occurred between these representatives in the next days that followed the exchange of correspondence. On August 3rd in a letter by fax from OPCA Vice President Gannon to Michael Carrigan, Secretary-Treasurer of the Illinois AFL-CIO, a request was made to proceed to a jurisdictional arbitration under the CDB PLA.

Occurring contemporaneously was an effort by BAC to initiate the processes and procedure of the Plan For Settlement Of Jurisdictional Disputes In the Construction Industry (hereinafter referred to as the Plan) to which both BAC and OPCA are signatory. Specifically, by date of August 1st Tim Driscoll in a letter to Richard Resnick, Administrator of the Plan, notified him of an "impediment to job progress" asserting that OPCA Local 18 had threatened to halt and impede the plastering work in dispute that had been assigned to plastering craftsmen working under a BAC labor agreement. OPCA was copied the correspondence and in a fax the same day denied the allegations of BAC. Following a series of exchanged correspondence, including a request by BAC that the matter proceed to arbitration, Plan Administrator Resnick advised the parties on August 7th that he was initiating the arbitration process, and submitted to them a form listing the Plan arbitrators with a request that it be returned with their designated preference no later than August 10th. As of the date of the hearing in this matter no Plan arbitration had been set. Also on August 7th, OPCA Michael Gannon in a faxed letter to the Employer and BAC citing PLA Article XII, 12.2 (d) (3) advised that Local 18 intends to challenge and decision of record that either of them may attempt to rely on in this arbitration matter.

## PROCEDURAL MOTIONS OF THE UNIONS

**Motion to award by "automatic default"**

OPCA moved that the Arbitrator award the disputed work to it on two bases: 1) that the Employer failed to comply with Article 12.2(a) in that no real negotiation occurred as required. And 2) that BAC, through the actions and inactions of representative Driscoll , i.e., his initiating the processes and procedure of the Plan while failing to contact OPCA and meet to confer and attempt to resolve the dispute, breeched the requirements of Article 12.2 (b).

**Motion to defer PLA Article XII Arbitration Proceeding to the Plan**

BAC moved that the Arbitrator not render a decision in the instant dispute inasmuch as the two Building Trades Unions are signatory to the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry and this very same work assignment dispute is pending before the Plan's Administrator, who has put in motion its arbitration process, albeit no arbitration hearing had been directed as of the date of the hearing in this matter. BAC asserted that the Plan's mechanism should be considered as superseding the jurisdictional dispute procedure in the PLA inasmuch as it is a national agreement to which the parent International Unions of both Local Unions have designated as the controlling method for resolving jurisdictional disputes. Further, even in the absence of contractual language in the PLA that would require deferral to the Plan, which BAC concedes, the Arbitrator should so defer in the interest of furthering the national agreed upon method of jurisdictional dispute resolutions which regularly have occurred in the past and are likely to continue to occur in the future between these two Unions.

**Arbitrator's Rulings**

Upon duly considering the motions of the Unions and arguments in support thereof, the Arbitrator denied the motions, and directed that the parties proceed with their respective case in chief. Those denials are affirmed.

The Arbitrator finds no merit to the contentions of OPCA that the relied upon provisions of Article 12.2 (a) and (b) were abrogated by either the Employer or the BAC. The cited provision states:

'If any party to the jurisdictional disputes does not fully comply with the steps and time limits with each step, then the party in non-compliance will lose by "automatic default".'

Article 12.2(a) directs that negotiation between the Local representative of the disputing Union and the Employer shall take place within two business days. It does not require a result favorable to the disputing Union, or qualify the nature, extent or degree of the obligation to negotiate. While it does contemplate that an effort be made to resolve the matter, a rebuff of the disputing Union's efforts to effectuate a reassignment or reach an accommodation is contemplated by the subsequent procedures set forth in (b) and (c). It is not the role of an arbitrator to attempt to quantify or qualify the nature of the negotiations. The teaching of Arbitrator Thomas F. Gibbons in his March 22, 2006 decision addressing Article XII of the PLA in an unrelated matter is that the procedure is intended to be an expedited one, and that a disputing Union must make known its objections to the Employer within two business days of its knowledge of the work assignment or risk an adverse "automatic default"

3

ruling. Further, to conclude that a disputing Union can be the recipient of an "automatic default" re-assignment of disputed work based upon the asserted failure of the Employer to negotiate in good faith would unjustifiably impose a penalty on the Union whose craftsmen have been assigned the work and who is not contemplated to be present at that step of the resolution process.

The Arbitrator finds no merit to the contention that BAC's actions or inactions constitute a breech of Article 12.2 (b). The wording of that section in the context of a jurisdictional dispute is confusing. It unambiguously states that "The International Representatives of the disputing Union shall meet or confer and attempt to resolve said dispute" in a two day time-frame. Interpreted literally, it moves the dispute from the local level (i.e. step one being a meeting between officials of the local and the Employer) to a higher level by involving representatives of International of the disputing Union. Indeed, this occurred here, and resulted in a request by OPCA for an arbitration hearing. Yet, in the context of a work assignment dispute involving the members of two contending unions at the work situs level, it is an often invoked practice to move it to the International level of both unions, where International Representatives might be more knowledgeable of the national industry practices and of prior resolutions, or be more skilled at reaching a resolution. Indeed. Jim Riemer, Sr., Deputy Director of Construction for CDB testified that in the past both practices as described above have occurred under the PLA. He was unsure whether the singular "disputing Union" language was or was not a typographical error. His testimony of a mixed practice was not contested. In these circumstances it is not warranted for this Arbitrator to interpret Article 12.2 (b) as imposing an affirmative obligation on BAC as urged by OPCA. Further, even if that article is interpreted as requiring that representatives of the two International Unions meet and confer in an effort to resolve the dispute, neither Union made an effort to effectuate such a meeting by following up on the exchange of correspondence.

The Arbitrator denied BAC's motion for deferral to the Plan's jurisdictional resolution procedure which is concurrently in motion. If the parties to the PLA had intended that possibility the contract is notably devoid of any such directive. To the contrary, Article XXII sets forth very detailed procedures and criteria for an arbitrator to follow. While some reference the product of the Plan, such as Decisions of Record, nowhere does it provide for deferral. It is well established that an arbitrator's authority is limited to the "four corners" of the contract under which he was appointed.

## ARBITRATOR'S FINDINGS REGARDING THE CRITERIA OF ARTICLE XXII

The PLA under Article 12.2 (d) prescribes a five step process that an arbitrator is charged to follow in reaching a determination regarding the work in dispute. As to (1), the parties stipulated that no precious agreement of record or applicable agreement between the International Unions to the dispute governs. Further, under criteria (2), the parties were in agreement that a previous decision of record governed the case. That decision was identified and introduced into the record, namely, a National Arbitration Panel Decision under the aforementioned construction industry Plan for the settlement of jurisdictional disputes issued on February 11, 2004, that was clarified by date of March 11, 2004. The particular dispute that gave rise to the ruling involved jurisdictional disputes between OPCA and BAC over cement finishing and plastering work.

4

The pertinent part of the decision as clarified states:

> "Henceforth, all jurisdictional disputes between the BAC and the OPCM that are brought before the Plan shall be resolved in favor of the work assignment of the involved Employer. Jurisdictional disputes between the BAC or OPCM ....brought before the Plan shall be resolved under the procedures of Article V of the Plan.

> "........Such scope is limited to cement finishing and plastering work tasks. "

It was also agreed by the parties, as noted previously, that OPCM had served notice prior to this hearing that it intends to challenge the decision of record. Accordingly, the Arbitrator provided the parties with an opportunity to provide evidence and argument as to whether "...the recognized and established prevailing practice in the locality of the work has been contrary to the applicable decision of record." which is the first consideration under section (3). That required, inter alia a determination by the Arbitrator as to what constituted the applicable locality. OPCM argued that it should be the CDB project covered by the PLA, relying on the language of page 1 of the PLA. BAC argued that the Arbitrator need not make any such determination, but ought to instead follow the dicta of arbitrator Tony Kelly who issued a decision under the Plan on August 12, 2004. That arbitration involved the two International Unions herein. OPCM argued at that hearing that the prevailing practice language in the Plan, which also appears in the PLA herein, should be applied as an exception to the holding of the aforementioned March 11th National Arbitration Panel decision. Arbitrator Kelly rejected OPCM's argument and held:

> 'It is the opinion of this Arbitrator that the (aforementioned National Arbitration Panel decision).....governs this case exclusively. This Decision of Record clearly and unequivocally states, "Henceforth, all jurisdictional disputes between the BAC and the OPCM that are brought before the Plan shall be resolved in favor of the work assignment of he involved Employer". This Arbitrator contends that the Decision literally means "all Jurisdictional disputes," irrespective of any claims by either party to prevailing practice as set forth under c) of Article V. Section B of the Plan.'

Alternatively, BAC argued that the locality practice, which historically has been confusing and difficult to ascertain, should for those reasons be considered to be state-wide.

The Arbitrator rejects BAC's argument that he should not accord precedent value to and follow the decision of arbitrator Kelly. That decision was rendered under the Plan not the CDB PLA under which this Arbitrator was given his charge. Whether arbitrator Kelly made a wise decision worthy of following is not within my prerogative to rely. I am bound to the four corners of the PLA, which contains the prevailing practice language. It may be that the National Arbitration Panel can in essence nullify that consideration under the Plan by its "Henceforth" dictum. This Arbitrator finds no such authority to re-write the existing agreement of the parties to the PLA. This is in keeping with

5

a doctrine enunciated by the US Supreme Court in one of its Steelworkers Trilogy decisions:

> (A)n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. **Steelworkers v. Enterprise Wheel & Car Corporation, 363 U.S. 593 (1960).**

As to the applicable locality of the work when considering established prevailing practice, the Arbitrator finds for neither that advanced by OPCM or alternatively by BAC . OPCM's project job site is too narrow. Conversely, BAC's state-wide geographic area is too broad for a dispute of this local nature. The Arbitrator finds that the applicable locality is that of the Springfield, Illinois area.

Further, the Arbitrator finds that OPCM has met its burden of demonstrating the existence of a recognized and established prevailing practice by employers in the Springfield area of exclusively using plasterers of OPCA Local 18, at least prior to Employer Phillips using plasters from BAC on the State Capital Building project approximately two weeks before this hearing. OPCM introduced numerous letters from local contractors as well as other documents and the testimony of two witnesses, one a plaster and dry wall contractor, the other a plasterer who retired in January 2001 and who worked 31 years in the trade, including 10 years as a Business Agent for OPCM and 17 years working for CDB.

The Arbitrator then considered the final criteria of Article 12.2 (d)(3), namely, whether historically in the locality of Springfield the work in dispute has or has not been performed by the craft relying on the Decision of Record. The Arbitrator finds that OPCM demonstrated that BAC had not performed the work, while BAC did not demonstrate that it has performed the work in dispute in this locality. In this regard, BAC did introduce evidence, through the testimony and recollection of a BAC Plasterers' Representative, that at least three individuals listed on remittance by contractors to OPCM Local 18 held membership in BAC under the plasterers' classification. In the Arbitrator's view, this falls short of the mark. Even granting that these individuals held BAC membership cards, which doesn't preclude dual membership in OPCA, the plastering work they performed was under a collective bargaining agreement with OPCA, not BAC. The criteria of (3) doesn't run to individual craftsmen's work records, but rather to whether, in this case BAC, as a craft Union with plasterers among its membership, has performed work in this locality under a contractual labor agreement. Clearly, prior the disputed assigned work; it has not performed plastering work in the Springfield area.

These findings and conclusions are affirmed.

6

## ARBITRATOR'S AWARD

In accord with my above findings and decisions, the Arbitrator finds that the disputed plastering work was mis-assigned to BAC Local 8 by the Responsible Employer. The disputed work at issue in this jurisdictional dispute is hereby assigned to the craftsmen/members of OPCA Local 18. This award shall apply only to this specific dispute in accordance with Article XII 2. (d)(6).

It is so ordered, by bench decision on August 8, 2006. This written decision is issued this day of August 10th, 2006 at Dunlap, Illinois.

**SIGNATURE REDACTED**

_____
Glenn A. Zipp, Arbitrator

7.

**E-FILED**
Friday, 13 October, 2006 02:54:54 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, *et al.*, | ) ) ) | |
| Plaintiffs, | ) | |
| vs. | ) | No. |
| | ) | |
| J. P. PHILLIPS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT IN SUPPORT OF ATTORNEY FEES

JAMES P. MOODY, having first been duly sworn on oath, states that the following itemization accurately represents the time and costs expended by this office in this cause:

| DATE | DESCRIPTION | HOURS |
|---|---|---|
| 09/19/06 | Research Secretary of State for corporate information; preparation of Complaint, Civil Cover Sheet; Certificate of Interest and Summons; assemble exhibits. | 2.00 |
| 09/19/06 | Preparation of Affidavit in Support of Attorney Fees. | .50 |
| | Telephone conference with Cook County private process servers regarding service fee. | .10 |
| | Final review of Complaint with exhibits, Civil Cover Sheet, Certificate of Interest, Summons. | .40 |
| 10/2/06 | Revise Complaint, Summons, Certificate of Interest, Civil Cover Sheet and Affidavit in Support of Attorney Fees. | .75 |
| | Revise and finalize Complaint, Summons, Certificate of Interest, Civil Cover Sheet; assembly of full Complaint with exhibits; Email to U.S. District Court for opening of new case. | 1.00 |
| | TOTAL HOURS 4.35 X $90.00 PER HOUR | $391.50 |
| | TOTAL HOURS .40 X $175.00 PER HOUR | $70.00 |
| | U.S. District Court - Filing Fee | $350.00 |
| | Excel Investigations - Service Fee | $75.00 |

1



EXHIBIT C

**TOTAL FEES AND COSTS**                                         **$886.50**

FURTHER THIS AFFIANT SAYETH NAUGHT.

_____ s/ James P. Moody ___
JAMES P. MOODY
**CAVANAGH & O'HARA**
407 East Adams
P. O. Box 5043
Springfield, IL 62705
Telephone (217) 544-1771
Fax (217) 544-9894
jim@cavanagh-ohara.com

SUBSCRIBED and SWORN to before me this 5th day of October 2006.

**SIGNATURE REDACTED**

Notary Public

"OFFICIAL SEAL"
PATRICIA J. ROBINSON
Notary Public, State of Illinois
My Commission Expires Feb. 16, 2010

2

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, et al.,

**DEFENDANTS**

J.P. PHILLIPS, INC.,

**(b)**  County of Residence of First Listed Plaintiff _Sangamon_
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  _Cook_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)
Cavanagh & O'Hara          (217) 544-1771
407 East Adams Street, Springfield, IL 62701

Attorneys (If Known)

## II. BASIS OF JURISDICTION     (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☒ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN     (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
E.R.I.S.A., 29 U.S.C. Sec. 1145
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $   Undetermined

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE                              DOCKET NUMBER

DATE   10/2/06

SIGNATURE OF ATTORNEY OF RECORD   s/ James P. Moody

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE