**E-FILED**
Friday, 13 April, 2007  03:55:45 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 PENSION FUND and CEMENT MASONS LOCAL #18, AREA #539 APPRENTICESHIP AND TRAINING FUND, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 06-CV-3232 |
| J. P. PHILLIPS, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN OPPOSITION OF
DEFENDANT'S MOTION TO DISMISS**

NOW COME Plaintiffs, OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, *et al.*, by and through its attorneys, Cavanagh & O'Hara, and herein file Plaintiffs' Memorandum of Law in Opposition of Defendant's Motion to Dismiss.

**I.     INTRODUCTION**

Plaintiffs have a statutory fiduciary obligation to collect all pension contributions, 29 U.S.C. §1104.  The Defendant asserts that the Court lacks jurisdiction in that there exist no written agreement requiring the Defendant to make contributions to Plaintiffs.  Such an argument is not a jurisdictional matter but rather a defense that should be raised in the Defendant's answer.  In any event, there does exist a written agreement which requires contributions to Plaintiffs.  J.P. Phillips, Inc. signed a Participation Agreement and agreed to be bound to the Capital Development Board Standard Project Labor Agreement (PLA).  The PLA incorporates by reference the Plasterers' collective bargaining agreement (Plasterers' CBA).  These documents meet the section 302(c)(5)(B) written agreement requirement.  29 U.S.C. § 186(c)(5)(B).

Under the PLA, Arbitrator Zipp held that the Defendant performed work covered by the Plasterers' CBA. The PLA supercedes the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (the "Plan") in that the parties to the PLA specifically adopted the arbitration procedures of the PLA. The PLA is devoid of any reference to the Plan and expressly states that "[i]t is mutually understood that where the provisions of this Agreement are at variance with any other agreement between the Contractor and the Union, the language of this Agreement shall prevail." This contractual provision expresses the parties' intent not to defer to the Plan arbitration procedures which are at variance the PLA. The Court should not re-write the parties' agreement in the PLA.

## II.    ARGUMENT

### 1)    Subject Matter Jurisdiction - FRCP 12(b)(1)

Defendant moves pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' complaint. The standard of review for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends upon the purpose of the motion. Freiburger v. Emery Air Charter, Inc., 795 F.Supp. 253, 256 (N.D.Ill.1992). Where the motion simply challenges the sufficiency of the allegations of subject matter jurisdiction, the court must accept as true all well plead factual allegations and draw all reasonable inferences in favor of the plaintiff. United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208 (7th Cir.1996). If, on the other hand, the motion denies the truth of the allegations, the court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir.1993). Dismissal is proper only if it appears beyond doubt that the plaintiff cannot prove any set of facts consistent with the pleadings that would entitle him or her to the relief requested. Conley v. Gibson,

2

355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Plaintiffs filed an ERISA collection action pursuant to 29 U.S.C. § 1145. The United States District Court has exclusive subject matter jurisdiction over such actions pursuant to 29 U.S.C. § 1132(e) which states in pertinent part:

> (1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary or any person referred to in section 1021(f)(1) of this title.

Because this is an action for delinquent contributions, the Court has subject matter jurisdiction. Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co., 108 S.Ct. 830, 834-35 (1988).

The Defendant's sole argument for its 12(b)(1) motion appears to be that there exist no written agreement requiring J.P. Phillips, Inc. to contribute to Plaintiffs. This argument is not a jurisdictional issue but rather a defense. Section 302(c)(5)(B) of the National Labor Relations Act, 29 U.S.C. § 186(c)(5)(B), permits employers to contribute to employee benefit trust funds provided that there is a written agreement with the employer. Absent a written agreement, the contributions are unlawful. This is a defense which the Defendant should plead as a part of its answer to Plaintiffs' complaint. Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 86-88, 102 S.Ct. 851, 861-62, 70 L.Ed.2d 833 (1982). The Court has jurisdiction herein and should allow the parties to conduct discovery before deciding this case on its merits.

The section 302(c)(5)(B) written agreement requirement is met by incorporating by reference another document that contains the requisite specificity. Rosen v. Biscayne Yacht & Country Club, Inc. 766 F.2d 482, 484 (11th Cir. 1985); Bricklayers Local 15 v. Stuart Plastering Co., 512 F.2d 1017, 1028-29 (5th Cir. 1975). A participation agreement that incorporated a trust agreement was

sufficient to meet the section 302(c)(5)(B) requirement.  Bricklayers Local 21 of Illinois Apprenticeship and Training Program v. Banner Restoration, Inc.,  385 F.3d 761, 770 (7th Cir. 2004), citing, Central States, Southeast & Southwest Areas Pension v. Behnke, Inc. 883 F.2d 454, 460 (6th Circuit 1989).  The written agreement requirement is met when the employer signs  an Assent of Participation referring to an unsigned collective bargaining agreement.  Gariup v. Birchler Ceiling & Interior Co., 777 F.2d 370, 376 (7th Cir. 1985).  Precedent makes it clear that a signature to a collective bargaining agreement is not a prerequisite to finding an employer bound to that agreement.  "[A] signature at the bottom of the collective bargaining agreement itself is unnecessary."  Moriarty v. Larry G. Lewis Funeral Dirs. Ltd., 150 F.3d 773, 777 (7th Cir. 1998).  Section 302(c)(5)(B) does not require a signed agreement but merely requires a written agreement.  Bricklayers Local 21, 385 F.3d at 770.  "Acceptance . . . can be manifested by conduct as well as by words."  Operating Eng'rs Local 139 Health Benefit Fund v.  Gustafson Construction Corp., 258 F.3d 645, 650 (7th Cir. 2001).

In this case, the section 302(c)(5)(B) written agreement requirement is met by the combined documents:

1)     Participation Agreement signed by J.P. Phillips, Inc.;
2)     Capital Development Board Standard Project Labor Agreement (PLA) which incorporates the Plasterers' CBA; and
3)     Contract Agreement between Central Illinois Builders of AGC and Plasterers Local 18, Area 59 Affiliate of the O.P.I.A. (Plasterers' CBA).

The Participation Agreement signed by J.P. Phillips, Inc. (See Exhibit C to Defendant's Memorandum of Law to Motion to Dismiss) states in pertinent part as follows:

PARTICIPATION AGREEMENT

The undersigned, a subcontractor to ____Core__ agrees to be bound by the attached Project Agreement negotiated between_____B.A.C._____ and the PLA Committee.

4

The Defendant has misinterpreted the above language and would have the Court believe that such language requires contributions to the Bricklayers. The language is void of any reference to a contribution requirement to the Bricklayers. The language does not even reference the Bricklayers' collective bargaining agreement or refer to fringe benefit contributions. Literally, such language would suggest that there was a project labor agreement between the Bricklayers and the PLA Committee. There is no such project labor agreement between the Bricklayers and the PLA Committee. The project labor agreement is between the Project Labor Committee and the Capital Development Board. The Defendant obviously filled in the Participation Agreement incorrectly by inserting the abbreviation "B.A.C." instead of the "CDB" or "Capital Development Board." The only reasonable interpretation of the language is that it is referring to the PLA negotiate between CDB and the PLA Committee.

The Participation Agreement binds J.P. Phillips, Inc. to the PLA. The PLA incorporates by reference the Plasterers' CBA. Section 1.2 of the PLA states in pertinent part as follows:

> 1.2    The contractor agrees to be bound by the terms of the Collective Bargaining Agreements and amendments thereto of the affiliates of the **PLA Committee** and the applicable employers association, if any. <u>Such agreements are incorporated herein by reference</u>. In order to comply with the requirements of the various fringe benefit funds to which the Contractor is to contribute, the Contractor shall sign such participation agreements as are necessary . . . [emphasis added] (See Exhibit B to Defendant's Memorandum of Law to Motion to Dismiss).

This section of the PLA incorporates all of the collective bargaining agreements of the PLA affiliates. There is no dispute that the Plasterers are a PLA affiliate. Donald Moss was appointed by the President of the Operative Plasterers' and Cement Masons' International Association to serve on the PLA Committee. (See Declaration of Donald Moss in **Exhibit A** attached hereto and incorporated herein). Donald Moss signed the PLA on behalf of the Operative Plasterers' and

Cement Masons' International Association and its affiliates.  (See Donald Moss's signature on page 11 of Exhibit B to Defendant's Memorandum of Law to Motion to Dismiss).

The Defendant has also misinterpreted the meaning of the phrase "the Contractor shall sign such participation agreements as are necessary . . ." which phrase is contained in section 1.2 of the PLA.  The term "participation agreement" in section 1.2 is not referring to the Participation Agreement in  Schedule A of the PLA as the Defendant asserts.  It is referring to any participation agreement that may be required by a trust fund.  These "participation agreements" are separate and apart from the PLA.  Some trust funds require that employers sign a separate participation agreement to contribute to the trust fund.  For example, Central Laborers' Funds require a participation agreement.  (An example of such participation  agreement is attached hereto and incorporated herein as **Exhibit B**).  Plaintiffs, however, do not require that employers sign a separate participation agreement.  If the terms  "participation agreements" in section 1.2 of the PLA were referring to the "Participation Agreement"  in Schedule A of the PLA, the terms would have been capitalized in section 1.2 as it is in section 1.1(a) of the PLA.  As stated in Section 1.1(a) of the PLA "sub-contractors . . . shall be required to sign the "Participation Agreement", attached hereto as Schedule A."  The "Participation Agreement" referred to in section 1.1(a) which is capitalized and the "participation agreements" referred to in section 1.2 are not the same.  The Defendant is confusing the issue and mixing apples with oranges.  The Participation Agreement in Schedule A binds the sub-contractor to the PLA.  The participation agreements in section 1.2 are  referring to the trust funds' participation agreements, if any.

The Defendant's signature on the PLA Participation Agreement binds J.P. Phillips, Inc. to the PLA.  The PLA incorporates the Plasterers' CBA which provides the detail basis for which contributions are to be paid. (See Plasterers' CBA - Exhibit E to Defendant's Memorandum of Law

to Motion to Dismiss).  These documents combined satisfy the section 302(c)(5)(B) written agreement requirement.  Rosen v. Biscayne Yacht & Country Club, Inc. 766 F.2d 482, 484 (11th Cir. 1985);  Bricklayers Local 15 v. Stuart Plastering Co., 512 F.2d 1017, 1028-29 (5th Cir. 1975);  Bricklayers Local 21 of Illinois Apprenticeship and Training Program v. Banner Restoration, Inc., 385 F.3d 761, 770 (7th Cir. 2004); Gariup v. Birchler Ceiling & Interior Co., 777 F.2d 370, 376 (7th Cir. 1985); Moriarty v. Larry G. Lewis Funeral Dirs. Ltd., 150 F.3d 773, 777 (7th Cir. 1998).

The Defendant's conduct and admissions also support the notion that J.P. Phillips, Inc. is a party to the PLA.  The Defendant participated in an arbitration under the PLA and admitted in that arbitration that it was a party to the PLA and performed work under the PLA.  (See Arbitration Decision of Glenn A. Zipp attached hereto and incorporated herein as **Exhibit C** ).

The PLA supercedes the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (the "Plan").  The United States Supreme Court has unanimously endorsed project labor agreements as effective tools for public entities in the construction industry.  Building and Constructions Trades Council of the Metropolitan District v. Associated Builders and Contractors of Massachusetts/Rhode Island, Inc., et al., 507 S.Ct. 1190 1197 (1993).  The PLA was negotiated by the PLA Committee which was comprised of representatives from the international unions of the respective crafts.  Donald Moss was appointed by the Plasterers' international union to serve on the PLA Committee.  (See Declaration of Donald Moss in **Exhibit A** attached hereto and incorporated herein).  He signed the PLA on behalf of the international.  Id.  The signature page of the PLA reflects the signatures of other international representatives (Eric Dean, International Representative for Iron Workers; Terry Fitzmaurice, International Union of Painters and Allied Trades; Terrance Healy, International Representative for Laborers International Union of North America; Terry Lynch, International Representative for Asbestos Workers).  (See page 11 of Exhibit

B of Defendant's Memorandum of Law to Motion to Dismiss). The PLA is not a "local agreement" but a national agreement negotiated by the parent unions of the Plasterers and Bricklayers. The PLA provides a mechanism to settle jurisdictional disputes. In an arbitration between the Bricklayers, J.P. Phillips, Inc. and the Plasterers, Arbitrator Zipp held that the Defendant performed work covered by the Plasterers' CBA. With regard to the Bricklayers' request to defer to the Plan, Arbitrator Zipp stated it correctly:

> The Arbitrator denied BAC's motion for deferral to the Plan's jurisdictional resolution procedure which is concurrently in motion. If the parties to the PLA had intended that possibility the contract is notably devoid of any such directive. To the contrary, Article XXII sets forth very detailed procedures and criteria for an arbitrator to follow. While some reference the product of the Plan, such as the Decisions of Record, nowhere does it provide for deferral. (See page 4 of Arbitrator Zipp's Decision in **Exhibit C** attached hereto and incorporated herein).

The international representatives for the Plasterers and Bricklayers were aware of the Plan's arbitration procedures but chose to adopt the arbitration procedures contained in the PLA. The Court should not re-write the existing agreement of the parties to the PLA.

The PLA further states that "[i]t is mutually understood that where the provisions of this Agreement are at variance with any other agreement between the Contractor and the Union, the language of this Agreement shall prevail." (See section 1.3 of the PLA in Exhibit B to Defendant's Memorandum of Law to Motion to Dismiss). This contractual provision further clarifies the parties' intent <u>not</u> to defer to the Plan which is at variance the PLA.

The Defendant submitted a letter from the Plasterers' International (See Exhibit G to Defendant's Memorandum of Law to Motion to Dismiss) and characterized that letter as voiding Arbitrator Zipp's decision. The letter says that "For purposes of the Plan's jurisdiction we acknowledge that the decision issued by Arbitrator Glenn A. Zipp in this same matter has no force

and effect under the Plan." This letter does not void Arbitrator Zipp's decision. The letter merely recognizes that there are two arbitration decisions and that Arbitrator Zipp's decision is limited in application to the PLA. It has no precedence under the Plan.

Plaintiffs are not bound by the Consent Order confirming Arbitrator McMahon's decision under the Plan. Plaintiffs are not a party to the Plan and cannot be bound by that Plan's decision or a subsequent confirmation of that decision. Plaintiffs believe that the Plan had no jurisdiction in this matter and that the McMahon decision is wrong. The McMahon arbitration decision is invalid.

The Defendant's only argument that it is not an employer within the meaning of ERISA is that J.P. Phillips, Inc. is not signatory to an agreement requiring contributions to Plaintiffs. J.P. Phillips, Inc. admittedly signed the Participation Agreement and agreed to be bound by the PLA which incorporates the Plasterers' CBA. These documents meet the section 302(c)(5)(B) written agreement requirement. The Defendant cannot deny that it is an employer within the meaning of ERISA.

The real issue in this case is whether the assignment of Plasterers' work to members of the Bricklayers' union excuses J.P. Phillips, Inc. from making contributions to the Plasterers' funds for the same work. The answer is no. Section 515 of ERISA obligates an employer to make contributions to a plan to which it is contractually obligated. If the work done by the Defendant employer is work that is cognizable under the Plasterers' CBA, the Defendant is required to make contributions for the work. Central States v. Gerber Truck Service, Inc., 870 F.2d 1148, 1153 (7th Cir.1989). The Funds' claims are based on contracts and not the principles of labor law and cover whole bargaining units not just the members of a particular union. Moriarty v. Larry G. Lewis Funeral Directors, Ltd., 150 F. 3d 773, 776 (7th Cir. 1998). In other words, if the CBA provides that

Plasterers are to perform plasterer work, an employer cannot avoid the fund obligation by assigning work to members of another union.  The Defendant J.P. Phillips, Inc. obligated itself to make contributions to both the Bricklayers' funds and Plasterers' funds.  A jurisdictional dispute does not affect the right of the Plaintiffs to recover contributions because NLRB defenses are not available to defeat an ERISA collection action.  Martin v. Garman, 945 F.2d 1000, 1005 (7th Cir. 1991); (employer must make full contributions promised in agreement even though employer had paid, and could not recoup, an identical sum to another pension plan based on an oral agreement with union, and employees would get their benefits from that other plan); Operating Engineers Pension Trust v. Beck Engineering & Surveying Co., 746 F.2d 557 (9th Cir.1984); Operating Engineers Pension Trust v. Giorgi, 788 F.2d 620 (9th Cir.1986) (fund entitled to full contribution promised outside of a collective bargaining agreement even though employer was required to, and did, make identical payments to another fund.  Where an employer entered into an agreement with two unions having jurisdiction over the same work, the employer is liable for contributions to the Funds of both unions for the disputed work.  Trustees of the Glaziers v. Glass Masters LTD, 2003 WL 1903991.  (A copy of the case is attached hereto and incorporated herein as **Exhibit D**).

      **2)**    **Failure to State a Claim - FRCP 12(b)(6)**

The standard of review for a Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the suit.  Autry v. Northwest Premium Serv., Inc., 144 F.3d 1037, 1039 (7th Cir. 1998).  When considering a motion to dismiss, the court views all the facts alleged in the complaint, as well as any inferences reasonably drawn from those facts, in the light most favorable to the plaintiff.  Id.  The court will grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts entitling him or her to relief.  Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 432 (7th Cir. 1993).  To survive a motion to dismiss, "a pleading

10

must only contain enough to allow the court and the defendant to understand the gravamen of the plaintiff's complaint." McCormick v. City of Chi., 230 F.3d 319, 323-24 (7th Cir. 2000). A party may assert additional facts in his or her response to a motion to dismiss if those facts are consistent with the allegations in the complaint. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir.1996); Highsmith v. Chrysler Credit Corp., 18 F.3d 434, 439-40 (7th Cir.1994). The federal rules require only that the complaint put the defendant on notice of plaintiff's claim. Ryan v. Mary Immaculate Queen Ctr., 188 F.3d 857, 860 (7th Cir. 1999).

Plaintiffs' pleading contains enough to allow the Court and the Defendant to understand the gravamen of the Plaintiffs' complaint. Surely the Defendant understands the nature of Plaintiffs' claim. It was able to respond in detail in its motion to dismiss. Plaintiffs have alleged that J.P. Phillips, Inc. is a party to the PLA. The Defendant signed the Participation Agreement and participated in an arbitration under the PLA. A copy of the PLA and arbitration decision were attached to the Complaint. The PLA incorporates by reference the Plasterers' CBA. Plaintiffs have alleged that the Defendant performed plastering work for which contributions are owed under the Plasterers' CBA. Viewing these facts in the light most favorable to the Plaintiffs, this Court should deny Defendant's Motion to Dismiss.

**WHEREFORE**, Plaintiffs, OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, *et al.*, by its attorneys, respectfully pray that this Court deny Defendant's Motion to Dismiss or, alternatively, grant Plaintiffs leave to amend its Complaint.

Respectfully submitted,

OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, *et al.*, Plaintiffs,

By:    <u>s/ James P. Moody</u>
          JAMES P. MOODY
          **CAVANAGH & O'HARA**
          407 East Adams
          P. O. Box 5043
          Springfield, IL 62705
          Telephone: (217) 544-1771
          Facsimile: (217) 544-5236
          jim@cavanagh-ohara.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of April, 2007, I electronically filed the forgoing Memorandum of Law in Opposition of Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Stanley E. Niew
Berglund & Niew, P.C.
900 Jorie Blvd., Suite 122
Oakbrook, Illinois 60523

Dated this 13th day of April 2007.

By:    <u>s/ James P. Moody</u>
          JAMES P. MOODY
          **CAVANAGH & O'HARA**
          407 East Adams
          P. O. Box 5043
          Springfield, IL 62705
          Telephone: (217) 544-1771
          Facsimile: (217) 544-5236
          jim@cavanagh-ohara.com

F:\files\CEMENT\J.P. Phillips, Inc\Responsetommotiontodismiss.2.wpd

E-FILED
Friday, 13 April, 2007  03:56:02 PM
Clerk, U.S. District Court, ILCD

## DECLARATION OF DONALD MOSS

I, DONALD MOSS, under penalties of perjury under the laws of the United States of America, state:

1.  I am the President and Business Manager of the Cement Masons Local 502 located in Bellwood, Illinois.

2.  I was appointed by Mr. John Dougherty, the President of the Operative Plasterers and Cement Masons International Association, to serve on the AFL-CIO Project Labor Committee and negotiate the Capital Development Board Standard Project Labor Agreement for the Illinois State House project in Springfield, Illinois.

3.  I signed the Capital Development Board Standard Project Labor Agreement on behalf of the Operative Plasterers and Cement Masons International Association.

4.  To the best of my knowledge and belief, the AFL-CIO Project Labor Committee was comprised of representatives from the international unions for the respective crafts.

Date: *April 13, 2007*

DONALD MOSS                          **SIGNATURE REDACTED**

"OFFICIAL SEAL"
Georgie L. Shepherd
Notary Public, State of Illinois
My Commission Exp. 05/11/2009

**SIGNATURE REDACTED**

EXHIBIT
A

# PARTICIPATION AGREEMENT

1. This Participation Agreement is entered into between **Gates Construction** (Employer) and the Central Laborers' Pension Fund, The Central Laborers' Welfare Fund, Central Laborers' Annuity Plan, Illinois Laborers' and Contractors' Training Fund and such other Funds or Plans listed below (all referred to as the "Funds"). The Employer hereby agrees that this document represents the detailed written Agreement required by the Labor Management Relations Act (29 U.S.C. Section 186 (c)) to permit the Funds to receive contributions from the Employer on behalf of Employees employed by the Employer within the jurisdiction of the Funds.

2. The Employer hereby agrees to be bound by and to the Agreements and Declarations of Trust establishing and amending the Central Laborers' Pension Fund and Central Laborers' Welfare Fund and all other funds or plans comprising the Funds, as heretofore and hereafter amended (the Trust Agreements), as though the Employer had actually signed the same. The various Agreements and Declarations of Trust are hereafter referred to as the "Trust Agreements." The Employer agrees to make contributions to the Funds (1) on behalf of all Employees, as all as defined in the Trust Agreements or applicable Collective Bargaining Agreements, (2) for all jobs within the geographical jurisdiction of the Funds, all as defined in the Trust Agreements or applicable Collective Bargaining Agreements, (3) for employment on all job classifications, all as defined in the Trust Agreements or applicable Collective Bargaining Agreements.

3. The Employer hereby agrees to pay the following contributions to the Funds for each Employee of the Employer, and the Employer agrees that the following contribution rates may change or vary with the location of the jobs or that the rates may be increased and/or decreased from time to time pursuant to the Trust Agreements or applicable Collective Bargaining Agreements.

| | | | |
|---|---|---|---|
| 4.00 | per hour to Central Laborers' Pension Fund | — | per hour to Industry Advancement Fund |
| 3.90 | per hour to Central Laborers' Welfare Fund | 1.40 | Working Dues (% or cents per hour) |
| 1.00 | per hour to Central Laborers' Annuity Fund | .30 | LECT |
| .40 | per hour to Illinois Laborers' and Contractors' Training Trust Fund | .30 | Other LEGAL |
| — | MRFFC | .60 | Other VACATION |

4. The Employer agrees to make the required contributions monthly and in such manner as required by the Trustees of the Funds for all Employees as defined in the Trust Agreements and the Trustees shall have the authority to have their accountant audit all payroll and all wage, job, bonds and other relevant records of the Employer upon reasonable notice for the purpose of determining the accuracy of the Employer's contributions to the Funds.

5. For the purpose of this Agreement, each hour worked for which the Employee receives pay, and other hours for which pay is received by the Employee in accordance with this and/or any applicable Agreement, shall be counted as hours for which contributions are payable.

6. If an Employer fails to pay contributions as required by the Trust Agreements and this Agreement, the Funds shall have the right to take whatever steps are necessary to secure compliance with this Agreement and the Trust Agreements, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all reasonable costs of collection of the payments due together with reasonable attorneys' fees and such other reasonable costs and charges as may be assessed by the Trustees of the Funds pursuant to the Trust Agreements, including the cost of any and all audits. In addition, the Employer agrees that all remittances not received by the 15th day of the month next following the month for which the contributions are due are subject to assessment of Liquidated Damages in the amount of 10% of the contributions or $25.00 minimum per remittance, to deter the increased administrative costs resulting from late payments, all pursuant to the Trust Agreements.

7. The Employer hereby irrevocably designates as its representatives on the Board of Trustees of the Funds such Trustees as are now serving, or their successors who will serve in the future, as Employer Trustees together with their successors. The Employer further agrees to be bound by all actions taken by the Board of Trustees pursuant to the Trust Agreements as heretofore and/or hereafter amended.

8. The Pension, Welfare and Annuity Plans adopted by the Trustees of the Funds and Plans shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions as a deduction for income tax purposes.

NO ALTERATIONS OR ADDITIONS TO THIS PARTICIPATION AGREEMENT SHALL BE EFFECTIVE UNLESS APPROVED IN WRITING BY THE TRUSTEES OF THE FUND.

| EMPLOYER | CENTRAL LABORERS' FUNDS |
|---|---|
| **Gates Const. Co.** | SEP 2003 RECEIVED |
| Name of Business | |
| **1605 N. Kickapoo St** | |
| Address | Authorized Signature |
| **Lincoln, IL. 62656** | Executive Administrator |
| City/State/Zip Code | Title |
| **217-937-6560** | UNION |
| Telephone | Territory in which Agreement signed: Local 158 |

Signatures redacted-pjr

| | |
|---|---|
| Authorized Signature | Authorized Signature |
| Title **OWNER** | Title **Business Manager** |
| Date **8-19-03** | Date **8/19/03** |

**EXHIBIT B**

White copy: Central Laborers' Pension, Welfare & Annuity Funds — Post Office Box 1267, Jacksonville, Illinois 62651-1267
Pink copy: Employer

RECEIVED AUG  E-FILED
Friday, 13 October, 2006 02:54:43 PM
Clerk, U.S. District Court, ILCD

In The Matter of Arbitration between:

Operative Plasterers' & Cement Masons' International Association of the United States and
Canada, AFL-CIO, Local 18,
The Complaining Union

And

International Union of Bricklayers & Allied Craftsmen, AFL-CIO, Local 8
The Defending Union

And

<u>JP Phillips, Inc., the Responsible Employer</u>

**Before:** Arbitrator Glenn A. Zipp

**Appearances:**

**For OPCM Local 18:** Michael J. Gannon
**For BAC Local 8:** Timothy J. Driscoll
**For the Employer:** Michael Pilolla

<u>Jurisdictional Dispute under the Capital Development Board
Standard Project Labor Agreement</u>

## DECISION

### PREFACE

A hearing in this matter of arbitration was held on August 8, 2006 at 1:00 pm at the Illinois AFL-CIO building located at 534 South Second Street, Springfield, Illinois. The undersigned Arbitrator was appointed to hear this matter under the provisions of Article XII (Jurisdictional Disputes ) of the CDB Project Labor Agreement to which the above-captioned parties are bound. All parties were present and were afforded a full opportunity to present evidence, call and examine witnesses and make arguments in support of their respective positions. At the conclusion of the hearing the undersigned Arbitrator gave a bench decision with all parties present, as prescribed by Article XII, setting forth the basis for his findings and conclusions in accordance with Article 12.2(d)(6). The Arbitrator found that under the criteria of Article XII the disputed work was mis-assigned, and awarded the work to the craftsmen of OPCA Local 18th. That award remains effective as of August 8th notwithstanding the issuance of this "long form" written decision which was requested under the provisions of Article12.2 (c). The provisions of Article XXII of the PLA are attached to this decision.



## THE WORK IN DISPUTE (JURISDICTIONAL ISSUE)

It was stipulated at the hearing that the disputed work assignment is the plastering work, including ornamental plastering and plastering repair and restoration work, at the State Capital Building CDB Project in Springfield, Illinois where CORE Construction is the General Contractor and the named Responsible Employer, JP Phillips, Inc. is a subcontractor. The hearing conducted in this matter pertains to this specific dispute. The jurisdictional issue addressed by the Arbitrator is whether this plastering is the work of craftsmen/members of BAC Local 8, which was given the assignment by JP Phillips, or that of the craftsmen/members of OPCA Local 18.

## BACKGROUND

On July 31, 2006 representatives of OPCA Local 18 became aware that the plastering work at the State Capital Building under the CDB project labor agreement (hereafter sometimes referred to as the PLA) had been assigned to BAC Local 8 and the plastering craftsmen it represents. Representatives of OPCA Local 18 thereafter timely contacted Mr. Pilolla of JP Phillips to negotiate a resolution in accordance with Article 12.2(a) of the PLA. Its efforts were abruptly rebuffed with no real negotiation ensuing according to OPCA. On August 1st (all dates hereinafter unless stated otherwise refer to 2006) John J. Dougherty, General President of OPCA, faxed a letter to John Flynn, President of BAC, informing him that a jurisdictional dispute may exist between the involved locals over the plastering restoration work at the State Capital, and requested pursuant to Article 12.2 (b) that he assign a representative to meet with OPCA Vice President Michael Gannon. President Flynn replied by fax on August 1st advising that he had designated Timothy Driscoll, Director of Trade Jurisdiction, as BAC's representative in this matter. No meeting or personal contact occurred between these representatives in the next days that followed the exchange of correspondence. On August 3rd in a letter by fax from OPCA Vice President Gannon to Michael Carrigan, Secretary-Treasurer of the Illinois AFL-CIO, a request was made to proceed to a jurisdictional arbitration under the CDB PLA.

Occurring contemporaneously was an effort by BAC to initiate the processes and procedure of the Plan For Settlement Of Jurisdictional Disputes In the Construction Industry (hereinafter referred to as the Plan) to which both BAC and OPCA are signatory. Specifically, by date of August 1st Tim Driscoll in a letter to Richard Resnick, Administrator of the Plan, notified him of an "impediment to job progress" asserting that OPCA Local 18 had threatened to halt and impede the plastering work in dispute that had been assigned to plastering craftsmen working under a BAC labor agreement. OPCA was copied the correspondence and in a fax the same day denied the allegations of BAC. Following a series of exchanged correspondence, including a request by BAC that the matter proceed to arbitration, Plan Administrator Resnick advised the parties on August 7th that he was initiating the arbitration process, and submitted to them a form listing the Plan arbitrators with a request that it be returned with their designated preference no later than August 10th. As of the date of the hearing in this matter no Plan arbitration had been set. Also on August 7th, OPCA Michael Gannon in a faxed letter to the Employer and BAC citing PLA Article XII, 12.2 (d) (3) advised that Local 18 intends to challenge and decision of record that either of them may attempt to rely on in this arbitration matter.

2

## PROCEDURAL MOTIONS OF THE UNIONS

**Motion to award by "automatic default"**

OPCA moved that the Arbitrator award the disputed work to it on two bases: 1) that the Employer failed to comply with Article 12.2(a) in that no real negotiation occurred as required. And 2) that BAC, through the actions and inactions of representative Driscoll , i.e., his initiating the processes and procedure of the Plan while failing to contact OPCA and meet to confer and attempt to resolve the dispute, breeched the requirements of Article 12.2 (b).

**Motion to defer PLA Article XII Arbitration Proceeding to the Plan**

BAC moved that the Arbitrator not render a decision in the instant dispute inasmuch as the two Building Trades Unions are signatory to the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry and this very same work assignment dispute is pending before the Plan's Administrator, who has put in motion its arbitration process, albeit no arbitration hearing had been directed as of the date of the hearing in this matter. BAC asserted that the Plan's mechanism should be considered as superseding the jurisdictional dispute procedure in the PLA inasmuch as it is a national agreement to which the parent International Unions of both Local Unions have designated as the controlling method for resolving jurisdictional disputes. Further, even in the absence of contractual language in the PLA that would require deferral to the Plan, which BAC concedes, the Arbitrator should so defer in the interest of furthering the national agreed upon method of jurisdictional dispute resolutions which regularly have occurred in the past and are likely to continue to occur in the future between these two Unions.

**Arbitrator's Rulings**

Upon duly considering the motions of the Unions and arguments in support thereof, the Arbitrator denied the motions, and directed that the parties proceed with their respective case in chief. Those denials are affirmed.

The Arbitrator finds no merit to the contentions of OPCA that the relied upon provisions of Article 12.2 (a) and (b) were abrogated by either the Employer or the BAC. The cited provision states:

> 'If any party to the jurisdictional disputes does not fully comply with the steps and time limits with each step, then the party in non-compliance will lose by "automatic default".'

Article 12.2(a) directs that negotiation between the Local representative of the disputing Union and the Employer shall take place within two business days. It does not require a result favorable to the disputing Union, or qualify the nature, extent or degree of the obligation to negotiate. While it does contemplate that an effort be made to resolve the matter, a rebuff of the disputing Union's efforts to effectuate a reassignment or reach an accommodation is contemplated by the subsequent procedures set forth in (b) and (c). It is not the role of an arbitrator to attempt to quantify or qualify the nature of the negotiations. The teaching of Arbitrator Thomas F. Gibbons in his March 22, 2006 decision addressing Article XII of the PLA in an unrelated matter is that the procedure is intended to be an expedited one, and that a disputing Union must make known its objections to the Employer within two business days of its knowledge of the work assignment or risk an adverse "automatic default"

3

ruling. Further, to conclude that a disputing Union can be the recipient of an "automatic default" re-assignment of disputed work based upon the asserted failure of the Employer to negotiate in good faith would unjustifiably impose a penalty on the Union whose craftsmen have been assigned the work and who is not contemplated to be present at that step of the resolution process.

The Arbitrator finds no merit to the contention that BAC's actions or inactions constitute a breech of Article 12.2 (b). The wording of that section in the context of a jurisdictional dispute is confusing. It unambiguously states that "The International Representatives of the disputing Union shall meet or confer and attempt to resolve said dispute" in a two day time-frame. Interpreted literally, it moves the dispute from the local level ( i.e. step one being a meeting between officials of the local and the Employer) to a higher level by involving representatives of International of the disputing Union. Indeed, this occurred here, and resulted in a request by OPCA for an arbitration hearing. Yet, in the context of a work assignment dispute involving the members of two contending unions at the work situs level, it is an often invoked practice to move it to the International level of both unions, where International Representatives might be more knowledgeable of the national industry practices and of prior resolutions, or be more skilled at reaching a resolution. Indeed, Jim Riemer, Sr., Deputy Director of Construction for CDB testified that in the past both practices as described above have occurred under the PLA. He was unsure whether the singular "disputing Union" language was or was not a typographical error. His testimony of a mixed practice was not contested. In these circumstances it is not warranted for this Arbitrator to interpret Article 12.2 (b) as imposing an affirmative obligation on BAC as urged by OPCA. Further, even if that article is interpreted as requiring that representatives of the two International Unions meet and confer in an effort to resolve the dispute, neither Union made an effort to effectuate such a meeting by following up on the exchange of correspondence.

The Arbitrator denied BAC's motion for deferral to the Plan's jurisdictional resolution procedure which is concurrently in motion. If the parties to the PLA had intended that possibility the contract is notably devoid of any such directive. To the contrary, Article XXII sets forth very detailed procedures and criteria for an arbitrator to follow. While some reference the product of the Plan, such as Decisions of Record, nowhere does it provide for deferral. It is well established that an arbitrator's authority is limited to the "four corners" of the contract under which he was appointed.

## ARBITRATOR'S FINDINGS REGARDING THE CRITERIA OF ARTICLE XXII

The PLA under Article 12.2 (d) prescribes a five-step process that an arbitrator is charged to follow in reaching a determination regarding the work in dispute. As to (1), the parties stipulated that no precious agreement of record or applicable agreement between the International Unions to the dispute governs. Further, under criteria (2), the parties were in agreement that a previous decision of record governed the case. That decision was identified and introduced into the record, namely, a National Arbitration Panel Decision under the aforementioned construction industry Plan for the settlement of jurisdictional disputes issued on February 11, 2004, that was clarified by date of March 11, 2004. The particular dispute that gave rise to the ruling involved jurisdictional disputes between OPCA and BAC over cement finishing and plastering work.

4

The pertinent part of the decision as clarified states:

"Henceforth, all jurisdictional disputes between the BAC and the OPCM that are brought before the Plan shall be resolved in favor of the work assignment of the involved Employer. Jurisdictional disputes between the BAC or OPCM ....brought before the Plan shall be resolved under the procedures of Article V of the Plan.

".........Such scope is limited to cement finishing and plastering work tasks. "

It was also agreed by the parties, as noted previously, that OPCM had served notice prior to this hearing that it intends to challenge the decision of record. Accordingly, the Arbitrator provided the parties with an opportunity to provide evidence and argument as to whether "...the recognized and established prevailing practice in the locality of the work has been contrary to the applicable decision of record." which is the first consideration under section (3). That required, inter alia a determination by the Arbitrator as to what constituted the applicable locality. OPCM argued that it should be the CDB project covered by the PLA, relying on the language of page 1 of the PLA. BAC argued that the Arbitrator need not make any such determination, but ought to instead follow the dicta of arbitrator Tony Kelly who issued a decision under the Plan on August 12, 2004. That arbitration involved the two International Unions herein. OPCM argued at that hearing that the prevailing practice language in the Plan, which also appears in the PLA herein, should be applied as an exception to the holding of the aforementioned March 11th National Arbitration Panel decision. Arbitrator Kelly rejected OPCM's argument and held:

'It is the opinion of this Arbitrator that the (aforementioned National Arbitration Panel decision)......governs this case exclusively. This Decision of Record clearly and unequivocally states, "Henceforth, all jurisdictional disputes between the BAC and the OPCM that are brought before the Plan shall be resolved in favor of the work assignment of he involved Employer". This Arbitrator contends that the Decision literally means "all Jurisdictional disputes," irrespective of any claims by either party to prevailing practice as set forth under c) of Article V. Section B of the Plan'.

Alternatively, BAC argued that the locality practice, which historically has been confusing and difficult to ascertain, should for those reasons be considered to be state-wide.

The Arbitrator rejects BAC's argument that he should accord precedent value to and follow the decision of arbitrator Kelly. That decision was rendered under the Plan not the CDB PLA under which this Arbitrator was given his charge. Whether arbitrator Kelly made a wise decision worthy of following is not within my prerogative to rely. I am bound to the four corners of the PLA, which contains the prevailing practice language. It may be that the National Arbitration Panel can in essence nullify that consideration under the Plan by its "Henceforth" dictum. This Arbitrator finds no such authority to re-write the existing agreement of the parties to the PLA. This is in keeping with

5

a doctrine enunciated by the US Supreme Court in one of its Steelworkers Trilogy decisions:

> (A)n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. **Steelworkers v. Enterprise Wheel & Car Corporation, 363 U.S. 593 (1960).**

As to the applicable locality of the work when considering established prevailing practice, the Arbitrator finds for neither that advanced by OPCM or alternatively by BAC . OPCM's project job site is too narrow. Conversely, BAC's state-wide geographic area is too broad for a dispute of this local nature. The Arbitrator finds that the applicable locality is that of the Springfield, Illinois area.

Further, the Arbitrator finds that OPCM has met its burden of demonstrating the existence of a recognized and established prevailing practice by employers in the Springfield area of exclusively using plasterers of OPCA Local 18, at least prior to Employer Phillips using plasters from BAC on the State Capital Building project approximately two weeks before this hearing. OPCM introduced numerous letters from local contractors as well as other documents and the testimony of two witnesses, one a plaster and dry wall contractor, the other a plasterer who retired in January 2001 and who worked 31 years in the trade, including 10 years as a Business Agent for OPCM and 17 years working for CDB.

The Arbitrator then considered the final criteria of Article 12.2 (d)(3), namely, whether historically in the locality of Springfield the work in dispute has or has not been performed by the craft relying on the Decision of Record. The Arbitrator finds that OPCM demonstrated that BAC had not performed the work, while BAC did not demonstrate that it has performed the work in dispute in this locality. In this regard, BAC did introduce evidence, through the testimony and recollection of a BAC Plasterers' Representative, that at least three individuals listed on remittance by contractors to OPCM Local 18 held membership in BAC under the plasterers' classification. In the Arbitrator's view, this falls short of the mark. Even granting that these individuals held BAC membership cards, which doesn't preclude dual membership in OPCA, the plastering work they performed was under a collective bargaining agreement with OPCA, not BAC. The criteria of (3) doesn't run to individual craftsmen's work records, but rather to whether, in this case BAC, as a craft Union with plasterers among its membership, has performed work in this locality under a contractual labor agreement. Clearly, prior the disputed assigned work; it has not performed plastering work in the Springfield area.

These findings and conclusions are affirmed.

6

## ARBITRATOR'S AWARD

In accord with my above findings and decisions, the Arbitrator finds that the disputed plastering work was mis-assigned to BAC Local 8 by the Responsible Employer. The disputed work at issue in this jurisdictional dispute is hereby assigned to the craftsmen/members of OPCA Local 18. This award shall apply only to this specific dispute in accordance with Article XII 2. (d)(6).

It is so ordered, by bench decision on August 8, 2006. This written decision is issued this day of August 10th, 2006 at Dunlap, Illinois.

**SIGNATURE REDACTED**

_____
Glenn A. Zipp, Arbitrator

7.

E-FILED
Friday, 13 April, 2007  03:57:32 PM
Clerk, U.S. District Court, ILCD

Not Reported in F.Supp.2d, 2003 WL 1903991 (N.D.Ill.), 30 Employee Benefits Cas. 2113

Motions, Pleadings and Filings

United States District Court,
N.D. Illinois, Eastern Division.
TRUSTEES OF THE GLAZIERS, Architectural Metal and Glass Workers Local Union No. 27 Welfare and
Pension Funds, Plaintiffs,
v.
GLASS MASTERS LTD., an Illinois corporation involuntarily dissolved and Peter Gibson, Individually
and d/b/a Glass Masters Ltd ., Defendants.
No. 02 C 3503.
April 17, 2003.

MEMORANDUM OPINION AND ORDER

LEINENWEBER, J.
**\*1** The plaintiffs are fiduciaries and plan sponsors of the Glaziers, Architectural Metal and Glass Workers Local Union No. 27 Welfare Fund and Pension Fund (respectively, the "Funds"). They bring this action under ERISA to recover delinquent contributions and other amounts the Defendants allegedly owe under the collective bargaining agreements and trust agreements to which defendants are signatories. The defendants are a dissolved corporation and its incorporator, Peter Gibson, (collectively, "Glass Masters") who continues to operate the business as a d/b/a and is therefore liable for its obligations. 805 ILCS 5/3.20.

BACKGROUND

Glass Masters has bound itself to successive Collective Bargaining Agreements ("CBAs") with the Glaziers' Local beginning in 1994 and extending through June 2003. In October 1997, Glass Masters executed a Collective Bargaining Agreement with an Ironworkers Union local. Less than a year later, in July 1998, Glass Masters executed a new CBA with the Glaziers' Local. The Glazier CBA bargaining unit encompasses employees who perform glazing work, and Glass Masters contends that the Iron Workers' CBA does also. Gibson admits that the CBAs have overlapping coverage for Glazing work but contends that the CBAs give him the right to select which Union is to do the work.

The plaintiffs' auditor conducted a fringe benefit compliance audit with respect to two jobs Glass Masters performed during the period from January 1, 1999 through July 31, 2002. The two jobs included work entirely within the geographic coverage of the Glaziers CBA. Eighty-five to ninety percent of the work under the audit was clearly work covered by the Glaziers' CBA. ("Article 6 Classification/Scope of Work, Section 1. It is mutually understood and agreed that none but Journeyperson Glaziers or Apprentices will be employed on the following classifications: general glazing, ..."). The remaining fifteen percent apparently involved the installation of pre-glazed glass or metal work which is not covered work under the CBA. No contributions were made by defendants for the glazing work for which plaintiffs seek recovery in this suit, apparently because Glass Masters believed it had the right to assign glazing work to the Iron Workers Union. Glass Masters asserts that it made the required contributions to the Iron Worker Funds, corresponding to the plaintiffs' Funds in this case, and therefore need not contribute to the plaintiffs' Funds. The nub of the dispute therefore is whether the assignment of glazing work to the Iron Workers will excuse Glass Masters from making contributions to the Glazier Funds for the same work, even though it is covered work under the Glazier CBA.

DISCUSSION

EXHIBIT
tabbies

Section 515 of ERISA obligates an employer to make contributions to a plan to which it is contractually obligated. Defenses which might exist between the employer and the union, which are not apparent on the face of the written agreement, are not binding on the Funds, which has a status as a holder in due course. Therefore if the work done by defendants' employees is work that is cognizable under the Glazier CBA, the defendants are required to make contributions for the work, unless it is apparent otherwise from the face of the agreement. *Central States v. Gerber Truck Service, Inc ., 870 F.2d 1148, 1153 (7th Cir.1989)* (en banc). An employer may not choose persons to perform covered work which has the effect of excluding persons covered by the collective bargaining agreement and thereby avoiding the obligation to make contributions. The Funds claims are based on contracts and not principles of labor law and cover whole bargaining units not just the members of the particular union. *Moriarty v. Larry G. Lewis Funeral Directors, Ltd.,* 150 F .3d 773, 776 (7th Cir.1998). In other words, if the CBA provides that Glaziers are to perform glazing work, an employer cannot avoid the fund obligations by assigning work to non-union members or members of another union. Therefore, the question is: is the work performed covered work under the relevant CBA? If so, contributions are due; if not, no payment is required.

*\*2* Glass Masters have admitted that the audited work is covered by the Glazier CBA in its response to the Funds' Local Rule 56.1 statement and in its responsive brief. Since the work involved glazing it would be hard to deny. Therefore pursuant to the CBA the Funds became obligated to cover the employees whether they are members of the Glaziers' Union or not. *Larry G. Lewis, Id.* It is unfortunate that Glass Masters has apparently become obligated to contribute to the Funds of both unions for the disputed work but it has only itself to blame. Glass masters entered into CBAs with two unions apparently having jurisdiction to perform glazing work, without designating in the CBAs which union was to perform the work. The Funds cannot be expected to divine which union Glass Masters would favor. Joint jurisdiction to perform specific work does not amount to a jurisdictional dispute. *Chicago District Council of Carpenters Pension Fund v. Faith Builders, Inc.,* No. 00 C 1036, 2001 WL 99839 at \*4 (N.D.Ill. Jan. 30, 2001). Even if it did rise to the level of a jurisdictional dispute, it would not affect the right of the Funds to recover because NLRB defenses are normally not available to defeat an ERISA collection action. *Martin v. Garman,* 945 F.2d 1000, 1005 (7th Cir.1991).

*CONCLUSION*

The Court therefore finds that the Funds are entitled to Summary Judgment and since Glass Master does not dispute the hours and contribution levels, judgment is entered in favor of the Funds in the amount of Eighty-five Percent (85%) of the sums shown due by the audit.

IT IS SO ORDERED.

Copr. (C) West 2007 No Claim to Orig. U.S. Govt. Works N.D.Ill.,2003.
Trustees of Glaziers v. Glass Masters Ltd.
Not Reported in F.Supp.2d, 2003 WL 1903991 (N.D.Ill.), 30 Employee Benefits Cas. 2119

Motions, Pleadings and Filings (Back to top)

• 2003 WL 23818304 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendant's Motion to Supplement the Record (Jun. 25, 2003) 🖺 Original Image of this Document (PDF)
• 2003 WL 23818300 (Trial Motion, Memorandum and Affidavit) Movant's Response to Defendant's Statement of Additional Facts (Apr. 4, 2003) 🖺 Original Image of this Document (PDF)
• 2003 WL 23818292 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Defendants' Response to Plaintiffs Motion for Summary Judgment (Apr. 2, 2003) 🖺 Original Image of this Document with Appendix (PDF)
• 2003 WL 23818296 (Trial Motion, Memorandum and Affidavit) Plaintiffs Response to Defendants' Local Rule 56.1 Statement of Additional Material Facts as to Which the Defendants Contend There is no Genuine Issue (Apr. 2, 2003) 🖺 Original Image of this Document (PDF)
• 2003 WL 23818290 (Trial Pleading) Defendants' Answer to Plaintiffs' Motion for Summary Judgment