**E-FILED**
Tuesday, 09 October, 2007 10:58:29 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 PENSION FUND and CEMENT MASONS LOCAL #18, AREA #539 APPRENTICESHIP AND TRAINING FUND, | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 06-CV-3232 ) |
| J. P. PHILLIPS, INC., | ) ) |
| Defendant and Third Party Plaintiff, | ) ) ) |
| OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA, AFL-CIO, LOCAL #18, | ) ) ) ) ) |
| Third Party Defendant. | ) ) |

**THIRD PARTY DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT**

NOW COMES Third Party Defendant, OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA, AFL-CIO, LOCAL #18, by and through its attorneys, Cavanagh & O'Hara, and herein files its Motion For Summary Judgment.

**A.    INTRODUCTION**

The Court should dismiss J.P. Phillips, Inc.'s ("JPP") Third Party Complaint for three reasons.  First, JPP's claim for breach of contract (Plan arbitration agreement) must fail because the parties had no contractual duty to arbitrate at the Plan level.  The Capital Development Board Standard Project Labor Agreement ("PLA") superceded the Plan arbitration agreement.  The parties

were therefore contractually obligated to arbitrate under the PLA not the Plan. Second, JPP's claim is barred by its failure to vacate the Zipp Decision. JPP's failure to challenge the Zipp Decision within 90 days after the decision rendered the decision final. Finally, even assuming, for sake of argument only, that Local 18 violated the Plan provisions, the Trustees' claims for contributions are independent of the Zipp Decision. A jurisdictional dispute does not affect the rights of the Trustees to recover contributions because National Labor Relations Board ("NLRB") defenses are not available to defeat ERISA collections actions. Martin v. Garman, 945 F.2d 1000, 1005 (7th Cir. 1990). For these reasons, this Court should dismiss JPP's complaint with prejudice.

**B.     UNDISPUTED MATERIAL FACTS**

1.     J.P. Phillips, Inc. ("JPP") is an Illinois Corporation doing business in Franklin Park, Illinois. [See Third Party Complaint, ¶1].

2.     Operative Plasterers' and Cement Masons' International Association of the United States and Canada, AFL-CIO, Local #18 ("Local 18") is a labor organization located in Peoria, Illinois. [See Third Party Complaint,¶¶ 2-3].

3.     The Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185(a). [See Third Party Complaint, ¶3].

4.     At all relevant times, JPP and Local 18 were parties to the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry ("Plan"). [See Third Party Complaint, ¶9].

5.     On or around July 1, 2005, Local 18 became signatory to the Capital Development Board Standard Project Labor Agreement ("PLA"). [See Exhibit A to Plaintiffs' Complaint]. Local 18 was already a party to the Plan.

6.     In 2006, JPP became signatory to the PLA. [See **Exhibit 1** attached hereto and incorporated herein]. JPP was already a party to the Plan.

7.    Article I of the PLA titled "Intent and Purposes" states in pertinent part as follows:

1.1    It is mutually understood that the following terms and conditions relating to employment of workmen covered by this Agreement have been written in order to promote efficiency of construction operations and provide for peaceful settlement of labor disputes without strikes or lockouts, thereby promoting the public interest in assuring the timely and economical completion of the work.  It is also the intent of the parties to set out standard working conditions for the efficient prosecution of said construction work, herein to establish and maintain harmonious relations between all parties of the Agreement, to secure optimum productivity and to eliminate strikes, lockouts, or delays in the prosecution of the work.

(a)    Therefore, the following provisions will be binding upon _____ and all of its sub-contractors (hereinafter jointly referred to as "Contractors"), who shall be required to sign the "Participation Agreement" . . . The Unions hereby consent to apply the terms and conditions of this Project Agreement to said sub-contractors upon their signing of the "Participation Agreement". . . This Agreement may be modified by the mutual consent in writing by the parties signatory hereto.  [See Section 1.1 of PLA attached hereto as **Exhibit 2**].

8.    Article I, Section 1.2, of the PLA states in pertinent part as follows;

The Contractor agrees to be bound by the terms of the Collective Bargaining Agreements and amendments thereto of the affiliates of the PLA Committee and the applicable employer associations, if any.  Such agreements are incorporated herein by reference. [See Section 1.2 of PLA, **Exhibit 2**].

9.    Article I, Section 1.3, of the PLA states in pertinent part as follows:

It is mutually understood that where the provisions of this Agreement are at variance with any other agreement between a Contractor and the Union, the language of this Agreement shall prevail.  [See Section 1.3 of PLA, **Exhibit 2**].

10.    Article XII, Section 1.2, of the PLA titled "Jurisdictional Disputes" states in pertinent

part as follows:

It is agreed by and between the parties to this Agreement that any jurisdictional dispute shall be resolved in the following manner; each of the steps hereinafter listed shall be initiated by the parties in the sequence set

3

forth . . .

(c)    . . . An Arbitrator will be selected based on availability from the slate of permanent Arbitrators. The Arbitrator's bench decision will be given the day of the hearing and will be final and legally binding on this project only. [See Section 1.2 of PLA, **Exhibit 2**].

11.    The PLA applies to work performed by Employers, Contractors and Subcontractors on construction known as CDB Project No. 006-100-004, Upgrade HVAC System, Capital Building, Springfield, Illinois ("Project"). [See first paragraph of PLA, **Exhibit 2**].

12.    In 2006, JPP performed plasterers' work on the Project at the Illinois State Capital Building in Springfield, Illinois. [See Third Party Complaint, ¶6].

13.    On August 8, 2006, Local 18 brought a jurisdictional dispute under the PLA (Zipp Arbitration) seeking to have the plastering work assigned to Local 18 Plasterers instead of the Local 8 Bricklayers. [See Third Party Complaint, ¶13].

14.    The Arbitrator, Glenn Zipp, held that the plastering work at the Project should have been assigned to Local 18. [See Third Party Complaint, ¶14].

## C.    ARGUMENT

### 1.    Standard of Review

Summary judgment is proper when the pleadings and evidence on file show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the Court must determine whether the facts in the record, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the non-moving party, shows any genuine issue of material fact. Rule 56(c). Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When faced with a motion for summary judgment that meets this standard, the non-moving party must introduce specific facts showing there

4

is a genuine issue of material fact for trial.  Id. at 324.

JPP claims that Local 18 breached a contract (the Plan arbitration agreement) by initiating an arbitration under the PLA instead of the Plan.  JPP asserts that "[b]ut for the Zipp Arbitration Decision, the Funds would not have a claim for fringe benefit contributions from JPP."  Truth be told, JPP breached the PLA by initiating an arbitration under the Plan.  For the reasons stated below, JPP's Third Party Complaint should be dismissed with prejudice.

### 2.    The PLA Superceded the Plan

JPP's breach of contract claim must fail because the parties had no contractual duty to arbitrate utilizing the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry ("Plan").  Because the PLA superceded the Plan, the parties were required to arbitrate under the PLA not the Plan.  Without question, JPP and Local 18 were parties to the Plan.  However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." AT&T Technologies, Inc. v. Communication Workers of America, 475 U.S. 643, 648 (1986).  It logically follows that parties may contract away or substitute arbitration jurisdictions.  That is the case here.  It is undisputed that Local 18 was a party to the PLA.  It is also undisputed that JPP signed a Participation Agreement agreeing to be bound by the terms and conditions of the PLA.  [See **Exhibit 1**].  JPP admitted in its Motion to Dismiss that "JPP signed the Participation Agreement agreeing to be bound by the PLA . . . . [See footnote 1 on page 4 of Defendant's Memorandum of Law in Support of Motion to Dismiss dated March 30, 2007].  JPP and Local 18 signed the PLA after they were already a party to the Plan.  They effectively contracted away their agreement to arbitrate under the Plan and entered into a new agreement to arbitrate under the PLA for work done on the Project.

The PLA specifically provides for the arbitration of jurisdictional disputes. Article XII, Section 1.2, of the PLA titled "Jurisdictional Disputes" states in pertinent part as follows:

> It is agreed by and between the parties to this Agreement that any jurisdictional dispute shall be resolved in the following manner; each of the steps hereinafter listed shall be initiated by the parties in the sequence set forth . . .
>
> (c)     . . . An Arbitrator will be selected based on availability from the slate of permanent Arbitrators. The Arbitrator's bench decision will be given the day of the hearing and will be final and legally binding on this project only. [See Section 1.2 of PLA, **Exhibit 2**].

Pursuant to this language, JPP was contractually bound to arbitrate under the PLA. JPP cannot disregard its contractual obligation under the PLA for a more favorable forum at the Plan level.

Further, the Plan arbitration provisions are at variance with the PLA arbitration provisions. The purpose of the PLA was "to promote efficiency of construction operations and provide for peaceful settlement of labor disputes without strikes or lockouts, thereby promoting the public interest in assuring the timely and economical completion of the work." The PLA reconciled the various labor agreements involved with the Project to promote a simple and economic resolution to disputes. In furtherance of this goal, the PLA provided:

> It is mutually understood that where the provisions of this Agreement are at variance with any other agreement between a Contractor and the Union, the language of this Agreement shall prevail. (Emphasis added) [See Section 1.3 of PLA, **Exhibit 2**].

The PLA incorporates by reference (See Section 1.2 of PLA, **Exhibit 2**) the collective bargaining agreement of the signatory trades, but makes them unenforceable to the extent that they are at variance with the PLA. JPP cannot assert that the Plan arbitration provision prevails over the PLA arbitration provisions when the clear and expressed language of the PLA (which JPP is

6

admittedly a party) says that the PLA shall prevail.  JPP contracted away the Plan arbitration provision for the opportunity to work on the Project.  JPP cannot seek the benefits of the Project while at the same time disregarding its obligations under the PLA.

In determining whether a valid arbitration agreement arose between the parties, the court should look at the state law that ordinarily governs the formation of contracts.  Emergency Medical Care, Inc., v. Marion Medical Hospital, 94 F.3d 1059, 1060-61 (7th Cir. 1996).  The interpretation of a contract is a question of law determined by the court.  Florida East Coast Ry. Co v. CSX Transp., Inc., 42 F.3d 1125, 1128 (7th Cir. 1994).  Applying Illinois law, the Court should find that the PLA supercedes the Plan.  "It is well settled under the doctrine of merger and the parol evidence rule that a written agreement which is complete on its face supercedes all prior agreements on the same subject matter and bars the introduction of evidence concerning any prior term or agreement on that subject matter."  Barille v. Sears Roebuck and Co., 289 Ill.App.3d 171, 177, 224 Ill.Dec.557, 682 N.E.2d 118, 123 (1st Dist. 1997).  This is particularly true when the contract contains a merger clause.  Id.  Here the PLA is a written agreement which is complete on its face.  (See **Exhibit 2**). The Plan arbitration agreement and the PLA both deal with the same subject matter - that being arbitration procedures for resolving disputes.  Further, the PLA states "where the provisions of this Agreement are at variance with any other agreement between a Contractor and the Union, the language of this Agreement shall prevail."  (See Section 1.3 of PLA).  Clearly, as a matter of law, the PLA supercedes the Plan arbitration agreement.  "When the terms of a contract are clear and unambiguous, they must be enforced as written, and no court can rewrite a contract to provide a better bargain to suit one of the parties."  Saunders v. Michigan Avenue National Bank, 278 Ill.App.3d 307, 316, 214 Ill.Dec.1036, 662 N.E.2d 602, quoting Resolution, 248 Ill.App.3d at 112, 187 Ill.Dec. at 832, 618 N.E.2d at 423.

Under similar circumstances, the Ninth Circuit held that a Project Stabilization Agreement (PSA) <u>trumped</u> the local labor agreement.  <u>Huber, Hunt & Nichols, Inc. v. United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 38</u>, 282 F.3d 746 (9th Cir. 2002).  The PSA is the same as the PLA.  In <u>Huber</u>, the court <u>confirmed</u> the arbitrator's decision under the PSA and <u>vacated</u> the arbitrator's decision under the local labor agreement. The Court recognized the context in which the PSA was negotiated and the special  purpose for which it was intended to serve -  that being "to promote economical and extra-judicial resolution of the disputes arising during construction." <u>Id.</u> at 751.  The court took special note of the fact that the PSA incorporated by reference all the unions' labor agreements but made them unenforceable to the extent that they were in conflict with the PSA.  <u>Id</u>. at 747.  The language in the PSA is virtually identical to the language in Sections 1.2 and 1.3 of the PLA.  Arbitrator Zipp stated it correctly in his decision:

> The Arbitrator denied BAC's motion for deferral to the Plan's jurisdictional resolution procedure which is concurrently in motion.  If the parties to the PLA had intended that possibility the contract is notably devoid of any such directive.  To the contrary, Article XXII sets forth very detailed procedures and criteria for an arbitrator to follow.  While some reference the product of the Plan, such as the Decisions of Record, nowhere does it provide for deferral.  (See page 4 of Arbitrator Zipp's  Decision, Exhibit B to Complaint).

The Court should not re-write the existing agreement of the parties to the PLA.

**3.        JPP's Claim is Barred by its Failure to Vacate the Zipp Decision**

JPP's lawsuit that Local 18 violated the Plan arbitration agreement is really a suit to set aside a labor arbitration award under section 301 of the Taft-Hartley Act.  <u>Dries & Krump Manufacturing Company v. International Association of Machinists and Aerospace Workers, District No. 8</u>, 802 F.2d 247, 251 (7th Cir. 1986).  JPP made this point very clear in its complaint where it stated that "[b]ut for the Zipp Arbitration, the Funds would not have any claim for fringe benefit contributions

from JPP." (See ¶ 26 of the Third Party Complaint). The statute of limitations that applies to such suits brought in Illinois is 90 days. Id at 249. See also Sullivan v. Lemoncello, 36 F.3d 676, 681 (7th Cir. 1994). The Zipp Arbitration Decision was rendered on August 8, 2006. The present suit was filed on September 5, 2007 over a year after the Zipp Decision. "The well settled case law in this circuit holds that failure to challenge an arbitration award within the applicable limitations period renders the award final." Id. JPP's claim is barred by its failure to vacate the Zipp Decision.

### 4.     The Trustees' Claim is Independent of the Zipp Decision

JPP's signature on the PLA Participation Agreement binds it to the PLA. The PLA incorporates the Plasterers' CBA which provides the detail basis for which contributions are to be paid. (See Plasterers' CBA - Exhibit E to Defendant's Memorandum of Law to Motion to Dismiss). These documents combined satisfy the section 302(c)(5)(B) written agreement requirement. Rosen v. Biscayne Yacht & Country Club, Inc. 766 F.2d 482, 484 (11th Cir. 1985); Bricklayers Local 15 v. Stuart Plastering Co., 512 F.2d 1017, 1028-29 (5th Cir. 1975); Bricklayers Local 21 of Illinois Apprenticeship and Training Program v. Banner Restoration, Inc., 385 F.3d 761, 770 (7th Cir. 2004); Gariup v. Birchler Ceiling & Interior Co., 777 F.2d 370, 376 (7th Cir. 1985); Moriarty v. Larry G. Lewis Funeral Dirs. Ltd., 150 F.3d 773, 777 (7th Cir. 1998).

The assignment of Plasterers' work to members of the Bricklayers' union does not excuse JPP from making contributions to the Plasterers' funds for the same work. Section 515 of ERISA obligates an employer to make contributions to a plan to which it is contractually obligated. If the work done by JPP is work that is cognizable under the Plasterers' CBA, JPP is required to make contributions for the work. Central States v. Gerber Truck Service, Inc., 870 F.2d 1148, 1153 (7th Cir.1989). The Funds' claims are based on contracts and not the principles of labor law and cover whole bargaining units not just the members of a particular union. Moriarty v. Larry G. Lewis

9

Funeral Directors, Ltd., 150 F. 3d 773, 776 (7th Cir. 1998). If the CBA provides that Plasterers are to perform plasterer work, an employer cannot avoid the fund obligation by assigning work to members of another union. JPP obligated itself to make contributions to both the Bricklayers' funds and Plasterers' funds. A jurisdictional dispute does not affect the right of the Trustees to recover contributions because NLRB defenses are not available to defeat an ERISA collection action. Martin v. Garman, 945 F.2d 1000, 1005 (7th Cir. 1991); (employer must make full contributions promised in agreement even though employer had paid, and could not recoup, an identical sum to another pension plan based on an oral agreement with union, and employees would get their benefits from that other plan); Operating Engineers Pension Trust v. Beck Engineering & Surveying Co., 746 F.2d 557 (9th Cir.1984); Operating Engineers Pension Trust v. Giorgi, 788 F.2d 620 (9th Cir.1986) (fund entitled to full contribution promised outside of a collective bargaining agreement even though employer was required to, and did, make identical payments to another fund. Where an employer entered into an agreement with two unions having jurisdiction over the same work, the employer is liable for contributions to the Funds of both unions for the disputed work. Trustees of the Glaziers v. Glass Masters LTD, 2003 WL 1903991.

     **WHEREFORE**, Third Party Defendant, OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA, AFL-CIO, LOCAL #18, by its attorneys, respectfully prays that this Court grant its Motion for Summary Judgment and dismiss the Third Party Complaint with prejudice. Third Party Defendant further prays that this Court award it reasonable attorney fees and the costs to defend this case.

Respectfully submitted,

OPERATIVE PLASTERERS' AND
CEMENT MASONS' INTERNATIONAL
ASSOCIATION OF THE UNITED STATES
AND CANADA, AFL-CIO, LOCAL #18,
Third Party Defendant,


By: ___s/ James P. Moody_____
        JAMES P. MOODY
        **CAVANAGH & O'HARA**
        407 East Adams
        P. O. Box 5043
        Springfield, IL  62705
        Telephone:  (217) 544-1771
        Facsimile:  (217) 544-5236
        jim@cavanagh-ohara.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of October, 2007, I electronically filed the forgoing Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Stanley E. Niew
Berglund & Niew, P.C.
900 Jorie Blvd., Suite 122
Oakbrook, Illinois 60523

Dated this 9th day of October 2007.

By: ___s/ James P. Moody_____
        JAMES P. MOODY
        **CAVANAGH & O'HARA**
        407 East Adams
        P. O. Box 5043
        Springfield, IL  62705
        Telephone:  (217) 544-1771
        Facsimile:  (217) 544-5236
        jim@cavanagh-ohara.com

F:\files\CEMENT\J.P. Phillips, Inc\motiontodismissmol.wpd

E-FILED
Tuesday, 09 October, 2007  10:58:34 AM
Clerk, U.S. District Court, ILCD

## SCHEDULE A

## PARTICIPATION AGREEMENT

The undersigned, a subcontractor to ___Core___ agrees to be bound to the

attached Project Agreement negotiated between ___B.A.C.___ and the

PLA Committee.

___J. P. Phillips Inc___
Subcontractor

**SIGNATURE
REDACTED** by

___10-6-06___
Date

---

**EXHIBIT**

_1_

CDB 006-100-001
Vinci | Hamp Architects, Inc.
VHA #0541

00310-10

Standard Project Labor Agreement

E-FILED
Tuesday, 10 October, 2006 02:59:32 PM
Clerk, U.S. District Court, ILCD

## CAPITAL DEVELOPMENT BOARD
## STANDARD PROJECT LABOR AGREEMENT

This Agreement is entered into this _____ day of _____, 2005 by and between the Capital Development Board and the **AFL-CIO Project Labor Agreement Committee (PLA Committee)** for and on behalf of its affiliated members, hereinafter referred to individually and collectively, as the "Union". This Agreement shall apply to work performed by the Employer and its Contractors and Subcontractors on Construction know as the **CDB Project No. 006-100-004, Upgrade HVAC System, Capitol Building, Springfield, Illinois.**

## ARTICLE 1 - INTENT AND PURPOSES

1.1    It is mutually understood that the following terms and conditions relating to employment of workmen covered by this Agreement have been written in order to promote efficiency of construction operations and provide for peaceful settlement of labor disputes without strikes or lockouts, thereby promoting the public interest in assuring the timely and economical completion of the work. It is also the intent of the parties to set out standard working conditions for the efficient prosecution of said construction work, herein to establish and maintain harmonious relations between all parties of the Agreement, to secure optimum productivity and to eliminate strikes, lockouts, or delays in the prosecution of the work.

(a)    Therefore, the following provisions will be binding upon _____ and all its sub-contractors (hereinafter jointly referred to as "Contractor"), who shall be required to sign the "Participation Agreement", attached hereto as "Schedule A", and the Unions during the term of this Agreement and any renewal thereafter. The Unions hereby consent to apply the terms and conditions of this Project Agreement to said sub-contractors upon their signing the "Participation Agreement". It is understood that each sub-contractor will be considered and accepted by the Unions as a separate employer for the purposes of collective bargaining. It is further agreed that the employees working under this Agreement shall constitute a bargaining unit separate and distinct from all others. This Agreement may be modified by mutual consent in writing by the parties signatory hereto.

1.2    The Contractor agrees to be bound by the terms of the Collective Bargaining Agreements and amendments thereto of the affiliates of the **PLA Committee** and the applicable employers association, if any. Such agreements are incorporated herein by reference. In order to comply with the requirements of the various fringe benefit funds to which the Contractor is to contribute, the Contractor shall sign such participation agreements as are necessary. Upon written notice from any fringe benefit fund C.D.B. will withhold payment of delinquencies occurring on this project from the involved Prime Contractors.

1.3    It is mutually understood that where the provisions of this Agreement are at variance with any other agreement between the Contractor and the Union, the language of this Agreement shall prevail.

1.4    The Contractor and the Union agree that should the Collective Bargaining Agreement (CBA) of any **PLA Committee**. Affiliate signatory to this Agreement expire prior to the completion of this project, the expired contracts' terms will be maintained until a new CBA is ratified. The wages, and fringe benefits included in any new CBA will be effective on the effective date of the newly negotiated C.B.A. unless wage and fringe benefit retroactivity is agreed upon by the bargaining parties.

## ARTICLE II - RECOGNITION

2.1    The Contractor recognizes the PLA Committee and the signatory affiliates as the sole and exclusive bargaining representatives for its craft employees employed on the jobsite. PLA Committee



**EXHIBIT**
2

*Upgrade HVAC System*
*Springfield Capitol Building*

*CDB PROJECT No. 006-100-004*
*July 1, 2005*

affiliates signatory to this Agreement will have recognition on the project for their craft.

3:06-cv-03232-RM-BGC   # 23-3   Page 2 of 11

## ARTICLE III - ADMINISTRATION OF AGREEMENT

3.1     In order to assure that all parties have a clear understanding of the Agreement, to promote harmony and address potential problems, a pre-job conference will be held with the Contractor, PLA Committee Representatives and all signatory parties prior to the start of any work on the project.

3.2     Representatives of the Contractor and the Unions shall meet as required but not less than once a month to review the operation of this Agreement. The representatives at this meeting shall be empowered to resolve any dispute over the intent and application of the Agreement.

3.3     The Contractor shall make available in writing to the Unions and Council no less than one week prior to these meetings a job status report, planned activities for the next 30 day period, actual numbers of craft employees on the project and estimated numbers of employees by craft required for the next 30 day period. The purpose of this report is to allow time to address any potential jurisdictional problems and to ensure that no party signatory to the Agreement is hindering the continuous progress of the project through a lack of planning or shortage of manpower.

## ARTICLE IV - HOURS OF WORK OVERTIME SHIFTS & HOLIDAYS

4.1     The standard work day shall be an established consecutive eight (8) hour period between the hours of 7:00 a.m. and 5:00 p.m. with one-half hour designated as unpaid period for lunch. The standard work week shall be five (5) consecutive days of work commencing on Monday. Starting time which is to be established at the pre-job conference will be applicable to all craft employees on the project. Should job conditions dictate a change in the established starting time and/or a staggered lunch period on certain work of the project or with individual crafts, the Contractor, Business Managers of the crafts involved and the PLA Committee shall mutually agree to such changes. If work schedule change cannot be mutually agreed to between these parties, the hours fixed in the Agreement shall prevail.

4.2     All time before and after the established work day of eight (8) hours, Monday through Friday and all time on Saturday shall be paid in accordance with each crafts current collective bargaining agreement. All time on Sundays and Holidays shall be paid for at the rate of double time.

(a)     Fringe benefit payments for all overtime work shall be paid in accordance with each craft's Current collective Bargaining Agreement.

4.3     Shift work, if used, shall be as provided in the collective bargaining agreement of each affected craft.

4.4     Recognized Holidays shall be as follows: New Year's Day, Memorial Day, Fourth of July, Labor Day, Veterans Day (to be celebrated the day after Thanksgiving), Thanksgiving Day and Christmas Day. No work will be performed on Labor Day under any consideration, except in an extreme emergency and then only after consent is given by the Business Manager.

## ARTICLE V - ABSENTEEISM

5.1     The Contractor and the Union agree that the chronic and/or unexcused absenteeism is undesirable and must be controlled. Employees that develop a record of such absenteeism shall be identified by the Contractor to the appropriate referral facility and the Contractor shall support such action with the work record of the involved employee. Any employee terminated for such absenteeism shall not be eligible for rehire on the project for a period of no less than ninety (90) days.

## ARTICLE VI - MANAGEMENT RIGHTS

6.1     The Contractor retains and shall exercise full and exclusive authority and responsibility for the management of its operations, except as expressly limited by the terms of this Agreement and the Unions collective bargaining agreement.

## ARTICLE VII - GENERAL WORKING CONDITIONS

7.1     Employment begins and ends at the project site, to be determined at the Pre-Job Conference.

7.2     Employees shall be at their place of work at the starting time and shall remain at their place of work until quitting time. The parties reaffirm their policy of a fair days work for a fair days pay.

7.3     The Contractor may utilize brassing, or other systems to check employees in and out. Should such procedures be required, the techniques and rules regarding such procedures shall be established by mutual consent of the parties at the pre-job conference.

7.4     There shall be no limit on production by workmen nor restrictions on the full use of tools or equipment. Craftsmen using tools shall perform any work of their trade and shall work under the direction of the craft foreman. There shall be no restrictions on efficient use of manpower other than as may be required by safety regulations.

7.5     Crew Foreman shall be utilized as per the existing collective bargaining agreements. The Contractor agrees to allow crew foremen ample time to direct and supervise their crew. The Union agrees there will be no restrictions placed on crew foreman's ability to handle tools and materials.

7.6     The Contractor may utilize the most efficient methods or techniques of construction, tools or other labor saving devices to accomplish the work. Practices not a part of the terms and conditions of this Agreement will not be recognized.

7.7     Should overtime work be required, the Contractor will have the right to assign specific employees and/or crews to perform such overtime work as is necessary to accomplish the work.

7.8     The Contractor may establish such reasonable project rules as the Contractor deems appropriate. These rules will be reviewed and established at the pre-job conference and posted at the project site by the Contractor.

7.9     It is recognized that specialized or unusual equipment may be installed on the project and in such cases, the Union recognizes the right of the Contractor to involve the equipment supplier or vendor's personnel in supervising the setting of the equipment, making modifications and final alignment which may be necessary prior to and during the start-up procedure, in order to protect factory warranties.

7.10    In order to promote a harmonious relationship between the equipment or vendor's personnel and the Building Trades craftsmen, a meeting shall be held between the Contractor and the Unions prior to any involvement on the project by these personnel. The Contractor will inform the Unions of the nature of involvement by these personnel and the numbers of personnel to be involved, allowing ample time for the Union representatives to inform their stewards prior to the start of any work.

## ARTICLE VIII - SAFETY

employees covered by the terms of this Agreement shall at all times while in the employ of the Contractor be bound by the safety rules and regulations as established by the Contractor in accordance with the Construction Safety Act and OSHA.

    (a)    These rules and regulations will be published and posted at conspicuous places throughout the project.

    8.2    In accordance with the requirements of OSHA, it shall be the exclusive responsibility of each Contractor on a jobsite to which this Agreement applies, to assure safe working conditions for its employees and compliance by them with any safety rules contained herein or established by the Contractor. Nothing in this Agreement will make the PLA Committee or any of its affiliates liable to any employees or to other persons in the event that injury or accident occurs.

## ARTICLE IX - SUBCONTRACTING

    9.1    The Contractor agrees that neither he nor any of his subcontractors will subcontract any work to be done on the project except to a person, firm or corporation party signatory to this Agreement.

    9.2    Any Contractor or Sub-contractor working on the project covered by this Agreement shall as a condition to working on said project, become signatory to and perform all work under the terms of this Agreement. The furnishing of materials, supplies or equipment and the delivery thereof shall be in no case considered subcontracting.

## ARTICLE X - UNION REPRESENTATION

    10.1    Authorized representatives of the PLA Committee and its signatory affiliates shall have access to the project provided they do not interfere with the work of the employees and further provided that such representatives fully comply with the visitor and security rules established for the project.

    10.2    Each PLA Committee affiliate which is a party to this Agreement, shall have the right to designate a working journeyman as a steward. Such designated steward shall be a qualified worker performing the work of that craft and shall not exercise any supervisory functions. Each steward shall be concerned with the employees of the steward's employer and not with the employees of any other employer.

    10.3    The working steward will be paid at the applicable wage rate for the job classification in which he is employed.

    10.4    The working steward shall not be discriminated against because of his activities in performing his duties as steward, and except as otherwise provided in local agreements, shall be the last employee in his craft to be laid off in any reduction in force. Stewards will be subject to discharge to the same extent that other employees are only after notification to the Union Representative. The Contractor will permit stewards sufficient time to perform the duties inherent to a steward's responsibilities. Stewards will be offered available overtime work if qualified.

## ARTICLE XI - GRIEVANCE AND ARBITRATION PROCEDURES

    11.1    It is specifically agreed that in the event any disputes arises out of the interpretation or application of this Agreement, excluding jurisdictional disputes which are covered by an expedited procedure in Article XII below, the same shall be settled by means of the procedure set out herein upon mutual agreement of the parties. Otherwise, the procedure set forth in the local collective bargaining agreement shall be used, but in no case shall both procedures be utilized to resolve such disputes. No

be drawn to the attention of the Contractor by the Union or to the Union by the Contractor within five (5) working days after the alleged violation was committed or discovered by the grieving party.

11.2 Grievances shall be settled according to the following procedure:

(a) Step 1. The dispute shall be referred to the Steward of the craft union involved and a representative of the Contractor at the construction project.

(b) Step 2. In the event that the steward and the Contractor's representative at the construction site cannot reach agreement within two (2) working days after a meeting is arranged and held, the matter shall be referred to the Union Business Manager, a representative of the PLA Committee and the Project Superintendent and/or Project Manager.

(c) Step 3. In the event the dispute is not resolved within five (5) working days after completion of Step 2, these two shall request a panel of arbitrators from the U.S. Mediation and Conciliation Service for selection of an impartial arbitrator who shall hear the grievance and make a decision within ten (10) working days which shall be final and binding on all parties. The parties shall each pay the expense of their own representative. The decision of the arbitrator shall be binding upon all parties. The expense of the impartial arbitrator shall be borne equally by the Contractor and the involved craft Union.

## ARTICLE XII - JURISDICTIONAL DISPUTES

12.1 As used in this Agreement, the term "jurisdictional dispute" shall be defined as any dispute, difference or disagreement involving the assignment of particular work to one class or craft of employees rather than to a different class or craft of employees, regardless of that Contractor's contractual relationship to any other employer, contractor, or organization on the site.

12.2 It is agreed by and between the parties to this Agreement that any and all jurisdictional disputes shall be resolved in the following manner; each of the steps hereinafter listed shall be initiated by the parties in sequence as set forth:

(a) Negotiation by and between the Local Business Representative of the disputing Union and Employer shall take place within two (2) business days. Business days are defined as Monday through Friday excluding contract holidays. Such negotiations shall be pursued until it is apparent that the dispute cannot be resolved at the local level.

(b) The International Representatives of the disputing Union shall meet or confer and attempt to resolve said dispute. This meeting shall take place within two (2) business days. Business days are defined as Monday through Friday excluding contract holidays.

(c) The parties to the Jurisdictional Dispute shall submit the dispute directly to an Arbitrator after complying with paragraph (2b) above. The parties shall meet with the Arbitrator within three (3) business days. Business days are defined as Monday through Friday excluding contract holidays. An Arbitrator will be selected based on availability from the slate of permanent Arbitrators. The Arbitrator's bench decision will be given the day of the hearing and will be final and legally binding on this project only. The Arbitrator's bench decision will be

implemented without delay. The cost of Arbitration will be shared equally by the disputing parties. Any party to the dispute can require that a "long form" written decision be provided from the Arbitrator, however the cost of the "long form" written decision will be the responsibility of the party making the request.

Note:
- A jurisdictional dispute may be submitted based upon a pre-job assignment.
- If any party to the jurisdictional disputes does not fully comply with the steps and time limits with each step, then the party in non-compliance will lose by "automatic default".
- Time limits at any step can be extended if all parties to the jurisdictional dispute mutually agree in writing.
- All parties to a jurisdictional dispute can mutually agree to waive the time limits in steps (a) and (b) and proceed directly to an expedited arbitration hearing.

(d)     In rendering his decision, the Arbitrator shall determine:

(1)     First whether a previous agreement of record or applicable agreement, including a disclaimer agreement, between the National or International Unions to the dispute governs;

(2)     Only if the Arbitrator finds that the dispute is not covered by an appropriate or applicable agreement of record or agreement between the crafts to the dispute, he shall then consider whether there is a previous decision of record governing the case;

(3)     If the Arbitrator finds that a previous decision of record governs the case, the Arbitrator shall apply the decision of record in rendering his decision except under the following circumstances. After notice to the other parties to the dispute prior to the hearing that it intends to challenge the decision of record, if a trade challenging the decision of record is able to demonstrate that the recognized and established prevailing practice in the locality of the work has been contrary to the applicable decision of record, and that historically in that locality the work in dispute has not been performed by the other craft or crafts, the Arbitrator may rely on such prevailing practice rather than the decision of record. If the craft relying on the decision of record demonstrates that it has performed the work in dispute in the locality of the job, then the Arbitrator shall apply the decision of record in rendering his decision. If the Arbitrator finds that a craft has improperly obtained the prevailing practice in the locality through raiding, the undercutting of wagers or by the use of vertical agreements, the Arbitrator shall rely on the decision of record rather than the prevailing practice in the locality.

(4)     If no decision of record is applicable, the Arbitrator shall then consider the established trade practice in the industry and prevailing practice in the locality; and

(5)     Only if none of the above criteria is found to exist, the Arbitrator shall then consider that because efficiency, cost or continuity and good

management is essential to the well being of the industry, the interest of the consumer or the past practice of the employer shall not be ignored.

(6)     The Arbitrator shall set forth the basis for his decision and shall explain his findings regarding the applicability of the above criteria.  If lower-ranked criteria are relied upon, the Arbitrator shall explain why the higher-ranked criteria were not deemed applicable.  The Arbitrator's decision shall only apply to the job in dispute.

(7)     Agreements of record are applicable only to the party's signatory to such agreements.  Decision of record are applicable to all trades.

(8)     The Arbitrator is not authorized to award back pay or any other damages for a mis-assignment of work.  Nor may any party bring an independent action for back pay or any other damages, based upon a decision of an Arbitrator.

12.3     The signatory parties to this Agreement agree that jurisdictional disputes cannot and shall not interfere with the efficient and continuous operations required for the successful application of this Agreement.  In the event a dispute arises, the Contractor's assignment shall be followed until the dispute is resolved.

12.4     Equipment or material delivered to the job site will be unloaded promptly without regard to jurisdictional disputes which will be handled as per the provisions of this Agreement.  The Contractor will supply the Union with delivery schedules, allowing as much time as possible to insure the appropriate crafts will be available to unload the materials or equipment.

12.5     All signatory affiliates agree that upon request, a representative shall be assigned without delay to attempt a settlement in the event of a question on assignments.

## ARTICLE XIII - WORK STOPPAGES AND LOCKOUTS

13.1     During the term of this Agreement there shall be no strikes, picketing, work stoppages, slow downs are other disruptive activity for any reason by the PLA Committee, its affiliates or by any employee and there shall be no lockout by the Contractor.  Failure of any Union or employee to cross any picket line established at the project site is a violation of this Article.

13.2     The PLA Committee and its affiliates shall not sanction, aid or abet, encourage or continue any work stoppage, picketing or other disruptive activity and will not make any attempt of any kind to dissuade others from making deliveries to or performing services for or otherwise doing business with the Contractor at the project site.  Should any of these prohibited activities occur the Union will take the necessary action to end such prohibited activities.

13.3     No employee shall engage in any activities which violate this Article.  Any employee who participates in or encourages any activities which interfere with the normal operation of the project shall be subject to disciplinary action, including discharge, and if justifiably discharged for the above reasons, shall not be eligible for rehire on the same project for a period of not less than ninety (90) days.

13.4     Neither the PLA Committee or its affiliates, shall be liable for acts of employees for which it has not responsibility. The principal officer or officers of the PLA Committee will immediately instruct, order and use the best efforts of his office to cause the affiliated union or unions to cease any violations of this Article. The PLA Committee in its compliance with this obligation shall not be liable

for unauthorized acts of its affiliates. The principal officer or officers of any involved affiliate will immediately instruct, order or use the best effort of his office to cause the employees the union represents to cease any violations of this Article. A union complying with this obligation shall not be liable for unauthorized acts of employees it represents. The failure of the Contractor to exercise its right in any instance shall not be deemed a waiver of its right in any other instance.

13.5    In lieu of any action at law or equity, any party shall institute the following procedure when a breech of this Article is alleged, after all involved parties have been notified of the fact.

(a)    The party invoking this procedure shall notify an individual to be mutually agreed upon, whom the parties agree shall be the permanent arbitrator under this procedure. In the event the permanent arbitrator is unavailable at any time, he shall appoint his alternate. Notice to the arbitrator shall be by the most expeditious means available, with notice by telegram or any effective written means to the party alleged to be in violation and all involved parties.

(b)    Upon receipt of said notice the arbitrator named above shall set and hold a hearing within twenty-four (24) hours if it is contended the violation still exists but not before twenty-four (24) hours after the telegraph notice to all parties involved as required above.

(c)    The Arbitrator shall notify the parties by telegram or any other effective written means, of the place and time he has chosen for this hearing. Said hearing shall be completed in one session. A failure of any party or parties to attend said hearing shall not delay the hearing of evidence or issuance of an Award by the Arbitrator.

(d)    The sole issue at the hearing shall be whether or not a violation of this Article has in fact occurred. The Award shall be issued in writing within three (3) hours after the close of the hearing, and may be issued without an Opinion. If any party desires an Opinion, one shall be issued within fifteen (15) days, but its insurance shall not delay compliance with, or enforcement of, the Award. The Arbitrator may order cessation of the violation of this Article, and such Award shall be served on all parties by hand or registered mail upon issuance.

(e)    Such Award may be enforced by any court of competent jurisdiction upon the filing of the Agreement and all other relevant documents referred to herein above in the following manner. Telegraphic notice of the filing of such enforcement proceedings shall be given to the other party. In the proceeding to obtain a temporary order enforcing the Arbitrator's Award as issued under Section 13.5 of this Article, all parties waive the right to a hearing and agree that such proceedings may be exparte. Such agreement does not waive any party's right to participate in a hearing for a final order of enforcement. The Court's order or orders enforcing the Arbitrator's Award shall be served on all parties by hand or by delivery to their last known address or by registered mail.

(f)    Any rights created by statue or law governing arbitration proceedings inconsistent with the above procedure or which interfere with compliance therewith are hereby waived by parties to whom they accrue.

(g)    The fees and expenses of the Arbitrator shall be borne by the party or parties found in violation, or in the event no violation is found, such fees and expenses shall be borne by the moving party.

14.1    If any Article or provision of this Agreement shall be declared invalid, inoperative or unenforceable by operation of law or by any of the above mentioned tribunals of competent jurisdiction, the remainder of this Agreement or the application of such Article or provision to persons or circumstances other than those as to which it has been held invalid, inoperative or unenforceable shall not be affected thereby.

## ARTICLE XV - TERM OF AGREEMENT

15.1    This Agreement shall be in full force as of and from the date of the Notice of Award to the Substantial Completion of all applicable contractors.

3:06-cv-03232-RM-BGC    # 23-3    Page 10 of 11

# PARTICIPATION AGREEMENT

The undersigned, a subcontractor to _____ agrees to be bound to the attached Project Agreement negotiated between _____ and the PLA Committee.


_____               _____
Subcontractor                                                    By


_____
Date

## FOR THE AFL-CIO PROJECT LABOR AGREEMENT COMMITTEE:

**SIGNATURES REDACTED**

Jim Allen, President
Bricklayers

Michael T. Carrigan, Sec-Treasurer
Illinois AFL-CIO

Ed Christensen, Director
Elevator Constructors

Eric Dean, Int'l Representative
Iron Workers

Terry Fitzmaurice, Representative
IUPAT

Terrence Healy, Int'l Representative
LIUNA

Don Gorman, Executive Assistant
Carpenters

Terry Lynch, Int'l Representative
Asbestos Workers

Richard Mathis, President
Roofers

Donald Moss, Pres-Business Mgr
Cement Masons

Robert Paddock, Representative
IUOE State Council

John Skermont, Business Representative
Boilermakers

George Slater, President
Sheet Metal State Council

Lonnie Stephenson, Int'l Representative
IBEW

Dale Stewart, Representative
IL Conference of Teamsters

Stephen Toth, Int'l Representative
Plumbers & Pipe Fitters

## FOR THE CONTRACTORS:

GENERAL                     Date

PLUMBING                    Date

HEATING                     Date

VENTILATING                 Date

ELECTRICAL                  Date

FIRE PROTECTION             Date

*Upgrade HVAC System*
*Springfield Capitol Building*

*CDB PROJECT No. 006-100-004*
*July 1, 2005*