**E-FILED**
Monday, 26 November, 2007  02:55:22 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 PENSION FUND and CEMENT MASONS LOCAL #18, AREA #539 APPRENTICESHIP AND TRAINING FUND, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | )  No.  06-CV-3232 |
| J. P. PHILLIPS, INC., | ) ) ) |
| Defendant and Third Party Plaintiff, | ) ) ) |
| OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA, AFL-CIO, LOCAL #18, | ) ) ) ) ) |
| Third Party Defendant. | ) ) |

**PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
AND THIRD PARTY DEFENDANT'S REPLY**

NOW COME Plaintiffs, OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, *et al.*, and Third Party Defendant, OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA, AFL-CIO, LOCAL #18, by and through their attorneys, Cavanagh & O'Hara, and herein file Plaintiffs' Response to Motion for Summary Judgment and Third Party Defendant's Reply.

**I.     INTRODUCTION**

The Defendant J. P. Phillips, Inc.'s (JPP) sole argument is that but for the Zipp Arbitration Decision under the Project Labor Agreement (PLA), the Trustees would have no claim for contributions against JPP.  This is simply not true.  The Funds' claims are based on contracts not

the principles of labor law, and covers whole bargaining units not just the members of a particular union.  Even if there was no arbitration under the PLA, the Funds would still have a valid claim against JPP for contributions.  Even assuming for sake of argument that the arbitrations were relevant, Plaintiffs are not bound by the Plan arbitration.  Further, the Zipp Decision is valid because it was never vacated.  Finally, the PLA was negotiated by representative of the international unions who are parties to the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (the "Plan").  Had the international unions intended that disputes be handled through the Plan, such language would have been included in the PLA.

## II.    COMBINED RESPONSE TO UNDISPUTED MATERIAL FACTS AND REPLY TO ADDITIONAL MATERIAL FACTS

1.    Undisputed Material Facts - The following paragraphs are conceded to be undisputed and material: B and E.

2.    Disputed Material Facts - The following paragraph is disputed:

G.    JPP did submit to the terms and conditions of the Plasterer's Local 18 CBA when it signed the PLA (incorporating the Plasterer's CBA) and when it performed work under the PLA and submitted to an arbitration under the CBA.  (See Third Party Complaint generally, JPP's Answer to Complaint ¶7 and Participation Agreement attached as Exhibit 1 to Third Party Defendant's Motion for Summary Judgment ).

3.    Immaterial Facts - The following paragraphs are immaterial because the Fund's claims are based on contracts and not  principles of labor law: A, C, D, F, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V and W.

4.    Additional Material Facts:

A.    The Plaintiffs are separate and distinct legal entities from the Third Party

2

Defendant, Operative Plasterers' and Cement Masons' International Association of the United States and Canada, AFL-CIO, Local 18. (See JPP's Answer to Complaint ¶2).

      B.    The PLA was negotiated by representatives of the participating international unions. (See Declaration of Donald Moss attached as **Exhibit 1** and the signature page 11 of the PLA attached to Third Party Defendant's Motion for Summary Judgment).

      C.    JPP participated in an arbitration under the PLA, admitted in that arbitration that it was a party to the PLA and performed work under the PLA. (See Zip Decision attached to Plaintiffs' Complaint).

## III.    ARGUMENT

### A.    Plaintiffs' Claims are Based on Contracts Not Principles of Labor Law

The arbitration awards are not relevant in this case because a jurisdictional dispute does not affect the Plaintiffs' rights in ERISA collection actions  The issue in this case is whether JPP's assignment of Plasterers' work to members of the Bricklayers' union excuses JPP from making contributions to the Plasterers' funds for the same work. The answer is no. Section 515 of ERISA obligates an employer to make contributions to a plan to which it is contractually obligated. As pointed out by the Seventh Circuit, if the work done by the Defendant employer is work that is cognizable under the Plasterers' CBA, the Defendant is required to make contributions for the work. Central States v. Gerber Truck Service, Inc., 870 F.2d 1148, 1153 (7th Cir.1989). The Funds' claims are based on contracts and not the principles of labor law, and cover whole bargaining units not just the members of a particular union. Moriarty v. Larry G. Lewis Funeral Directors, Ltd., 150 F. 3d 773, 776 (7th Cir. 1998). In other words, if the CBA provides that Plasterers are to perform plasterer work, an employer cannot avoid the fund obligation by assigning work to members of another union. The Defendant JPP obligated itself to make contributions to both the Bricklayers' funds and

3

Plasterers' funds. A jurisdictional dispute does not affect the right of the Plaintiffs to recover contributions because NLRB defenses are not available to defeat an ERISA collection action. Martin v. Garman, 945 F.2d 1000, 1005 (7th Cir. 1991); (employer must make full contributions promised in agreement even though employer had paid, and could not recoup, an identical sum to another pension plan based on an oral agreement with union, and employees would get their benefits from that other plan); Operating Engineers Pension Trust v. Beck Engineering & Surveying Co., 746 F.2d 557 (9th Cir.1984); Operating Engineers Pension Trust v. Giorgi, 788 F.2d 620 (9th Cir.1986) (fund entitled to full contribution promised outside of a collective bargaining agreement even though employer was required to, and did, make identical payments to another fund. Where an employer entered into an agreement with two unions having jurisdiction over the same work, the employer is liable for contributions to the Funds of both unions for the disputed work. Trustees of the Glaziers v. Glass Masters LTD, 2003 WL 1903991. (A copy of the case is attached as **Exhibit 2**)

Plaintiffs have a statutory fiduciary obligation to collect all fringe benefit contributions, 29 U.S.C. §1104. In this case, JPP signed a Participation Agreement and agreed to be bound to the PLA. The PLA incorporates by reference the Plasterers' collective bargaining agreement (Plasterers' CBA). These documents meet the section 302(c)(5)(B) written agreement requirement. 29 U.S.C. § 186(c)(5)(B). The section 302(c)(5)(B) written agreement requirement is met by incorporating by reference another document that contains the requisite specificity. Rosen v. Biscayne Yacht & Country Club, Inc. 766 F.2d 482, 484 (11th Cir. 1985); Bricklayers Local 15 v. Stuart Plastering Co., 512 F.2d 1017, 1028-29 (5th Cir. 1975). A participation agreement that incorporated a trust agreement was sufficient to meet the section 302(c)(5)(B) requirement. Bricklayers Local 21 of Illinois Apprenticeship and Training Program v. Banner Restoration, Inc.,

4

385 F.3d 761, 770 (7th Cir. 2004), citing, Central States, Southeast & Southwest Areas Pension v. Behnke, Inc., 883 F.2d 454, 460 (6th Circuit 1989). The written agreement requirement is met when the employer signs  an Assent of Participation referring to an unsigned collective bargaining agreement. Gariup v. Birchler Ceiling & Interior Co., 777 F.2d 370, 376 (7th Cir. 1985). Precedent makes it clear that a signature to a collective bargaining agreement is not a prerequisite to finding an employer bound to that agreement. "[A] signature at the bottom of the collective bargaining agreement itself is unnecessary." Moriarty v. Larry G. Lewis Funeral Dirs. Ltd., 150 F.3d 773, 777 (7th Cir. 1998). Section 302(c)(5)(B) does not require a signed agreement but merely requires a written agreement. Bricklayers Local 21, 385 F.3d at 770. "Acceptance . . . can be manifested by conduct as well as by words." Operating Eng'rs Local 139 Health Benefit Fund v.  Gustafson Construction Corp., 258

F.3d 645, 650 (7th Cir. 2001). The Defendant's conduct and admissions also support the notion that JPP is a party to the PLA. The Defendant participated in an arbitration under the PLA and admitted in that arbitration that it was a party to the PLA and performed work under the PLA.  (See Zip Decision attached to Plaintiffs' Complaint).

The Defendant cites four cases asserting that JPP is not liable to Plaintiffs because JPP made payments to the Bricklayers.  Two of these (Glaziers Fund v. Gibson, 99 Fed. Appx. 740 (7th Cir. 2004) and Trustees of the BAC Local 32 Insurance Fund v. Ohio Ceiling and Partition Co., 48 Fed. Appx. 188 (6th Cir. 2002)) have no precedential value and should not have been cited.  Contrary to Defendant's assertion and the Gibson case, there was no pre-work agreement between JPP and Local 18 regarding plastering.  The dispute arose after the work had already begun.  The third case (Carpenters v. McKenzie, 217 F.3d 578 (8th Cir. 2000)) merely held that the payroll audit was insufficient to establish the employer's obligation.  The forth case (Roofer Local 30 v. NLRB, 1

F.3d 1429 (3d Cir. (1993)) is a labor law case not an ERISA case. As stated earlier, jurisdictional disputes are not defenses to ERISA actions.

### B.      PLA Supercedes Plan

Assuming for sake of argument that the arbitrations are relevant, which they are not, the PLA supercedes the Plan. The United States Supreme Court has unanimously endorsed project labor agreements as effective tools for public entities in the construction industry. Building and Constructions Trades Council of the Metropolitan District v. Associated Builders and Contractors of Massachusetts/Rhode Island, Inc., et al., 507 S.Ct. 1190 1197 (1993). The PLA was negotiated by the PLA Committee which was comprised of representatives from the international unions of the respective crafts. Donald Moss was appointed by the Plasterers' international union to serve on the PLA Committee. (See Declaration of Donald Moss in **Exhibit 1**). He signed the PLA on behalf of the international. Id. The signature page of the PLA reflects the signatures of other international representatives (Eric Dean, International Representative for Iron Workers; Terry Fitzmaurice, International Union of Painters and Allied Trades; Terrance Healy, International Representative for Laborers International Union of North America; Terry Lynch, International Representative for Asbestos Workers). (See page 11 of the PLA). The PLA is not a "local agreement" but a national agreement negotiated by the parent unions of the Plasterers and Bricklayers. The PLA provides a mechanism to settle jurisdictional disputes on the project. In an arbitration between the Bricklayers, JPP and the Plasterers, Arbitrator Zipp held that the Defendant performed work covered by the Plasterers' CBA. With regard to the Bricklayers' request to defer to the Plan, Arbitrator Zipp stated it correctly:

> The Arbitrator denied BAC's motion for deferral to the Plan's jurisdictional resolution procedure which is concurrently in motion. If the parties to the PLA had intended that possibility the contract is notably devoid of any such directive. To the

contrary, Article XXII sets forth very detailed procedures and criteria for an arbitrator to follow. While some reference the product of the Plan, such as the Decisions of Record, nowhere does it provide for deferral. (See page 4 of Arbitrator Zipp's Decision attached to Plaintiffs' Complaint).

The international representatives for the Plasterers and Bricklayers were aware of the Plan's arbitration procedures but chose to adopt the arbitration procedures contained in the PLA. The Court should not re-write the existing agreement of the parties to the PLA.

The PLA further states that "[i]t is mutually understood that where the provisions of this Agreement are at variance with any other agreement between the Contractor and the Union, the language of this Agreement shall prevail." (See section 1.3 of the PLA attached to Third Party Defendant's Motion for Summary Judgment). This contractual provision further clarifies the parties' intent not to defer to the Plan which is at variance the PLA.

The Ninth Circuit held that a Project Stabilization Agreement (PSA) trumped the local labor agreement. Huber, Hunt & Nichols, Inc. v. United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 38, 282 F.3d 746 (9th Cir. 2002). The PSA is the same as the PLA. In Huber, the court confirmed the arbitrator's decision under the PSA and vacated the arbitrator's decision under the local labor agreement. The Court recognized the context in which the PSA was negotiated and the special purpose for which it was intended to serve - that being "to promote economical and extra-judicial resolution of the disputes arising during construction." Id. at 751. The court took special note of the fact that the PSA incorporated by reference all the unions' labor agreements but made them unenforceable to the extent that they were in conflict with the PSA. Id. at 747. The language in the PSA is virtually identical to the language in Sections 1.2 and 1.3 of the PLA. The Plasterers' local CBA requires that it resolve disputes using the Plan procedures. Pursuant to Huber, the PLA trumps the Plan requirement contained in the Plasterers' local CBA.

7

**C.    Plaintiffs are not Bound by the Plan Arbitration**

Plaintiffs are separate legal entities distinct from the Operative Plasterers' and Cement Masons' International Association of the United States and Canada, AFL-CIO, Local 18. Plaintiffs are not a party to the Plan and cannot be bound by that Plan's decision (past or present) or a subsequent confirmation of such decisions. The Consent Order regarding the Plan arbitration in no way vacated the Zipp Decision. The Defendant submitted a letter from the Plasterers' International and characterized that letter as voiding Arbitrator Zipp's decision. The letter says that "For purposes of the Plan's jurisdiction we acknowledge that the decision issued by Arbitrator Glenn A. Zipp in this same matter has no force and effect under the Plan." This letter does not void Arbitrator Zipp's decision. The letter merely recognizes that there are two arbitration decisions and that Arbitrator Zipp's decision is limited in application to the PLA. It has no precedence under the Plan. Plaintiffs believe that the Plan had no jurisdiction in this matter and that the McMahon decision is wrong.

**D.    JPP's Claim and Defense to the ERISA Action is Barred by JPP's Failure to Vacate the Zipp Decision**

JPP's claim and defense is really a suit to set aside a labor arbitration award under section 301 of the Taft-Hartley Act. <u>Dries & Krump Manufacturing Company v. International Association of Machinists and Aerospace Workers, District No. 8</u>, 802 F.2d 247, 251 (7th Cir. 1986). JPP made this point very clear in its complaint where it stated that "[b]ut for the Zipp Arbitration, the Funds would not have any claim for fringe benefit contributions from JPP." (See ¶ 26 of the Third Party Complaint). The statute of limitations that applies to such suits brought in Illinois is 90 days. <u>Id</u> at 249. See also <u>Sullivan v. Lemoncello</u>, 36 F.3d 676, 681 (7th Cir. 1994). The Zipp Arbitration

Decision was rendered on August 8, 2006.  The present suit was filed on September 5, 2007 over a year after the Zipp Decision.  "The well settled case law in this circuit holds that failure to challenge an arbitration award within the applicable limitations period renders the award final." Id. JPP's claim is barred by its failure to vacate the Zipp Decision.  Further, a court will "generally not vacate arbitration awards by equipollent arbitrators."  (Huber, Hunt & Nichols, Inc. v. United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 38, 282 F.3d 746, 753 (9th Cir. 2002).  The court may confirm two such awards even if their reasoning is incompatible. Id.  In the Seventh Circuit, the court applies the narrow standard of review under the Federal Arbitration Act.  A party petitioning the federal court to vacate an arbitration award bears a heavy burden.  Neither error, nor clear error, nor even gross error is a ground for vacating an award.  IDS Life Ins. Co. v. Royal Alliance Assocs., Inc., 266 F.3d 645, 650 (7th Cir. 2001). Because the Defendant has failed to vacate the Zipp Decision, it is a valid award.  The Defendant cites no case law for its proposition that the Plan arbitration award has precedence over the Zipp Decision.

**WHEREFORE**, Plaintiffs and Third Party Defendant, by their attorneys, respectfully pray that this Court deny Defendant's Motion and Cross Motion for Summary Judgment and enter Summary Judgment in favor of Local 18 (dismissing the Third party Complaint) and in favor of Plaintiffs on the issue of liability.  The matter should then be set for trial solely on the issue of damages owed to Plaintiffs.

Respectfully submitted,

OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, *et al.*, Plaintiffs, and

OPERATIVE PLASTERERS' AND

CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA, AFL-CIO LOCAL #18, Third Party Defendant.


By: ___s/ James P. Moody_____
          JAMES P. MOODY
          **CAVANAGH & O'HARA**
          407 East Adams
          P. O. Box 5043
          Springfield, IL  62705
          Telephone:  (217) 544-1771
          Facsimile:  (217) 544-5236
          jim@cavanagh-ohara.com


## CERTIFICATE OF SERVICE

       I hereby certify that on the 26th day of November, 2007, I electronically filed the forgoing Memorandum of Law in Opposition of Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Stanley E. Niew
Berglund & Niew, P.C.
900 Jorie Blvd., Suite 122
Oakbrook, Illinois 60523

Dated this 26th day of November 2007.

                          By: ___s/ James P. Moody_____
                                JAMES P. MOODY
                                **CAVANAGH & O'HARA**
                                407 East Adams
                                P. O. Box 5043
                                Springfield, IL  62705
                                Telephone:  (217) 544-1771
                                Facsimile:  (217) 544-5236
                                jim@cavanagh-ohara.com


F:\files\CEMENT\J.P. Phillips, Inc\SJresponse.wpd

10

E-FILED
Friday, 13 April, 2007 03:56:03 PM
Clerk, U.S. District Court, ILCD

## DECLARATION OF DONALD MOSS

I, DONALD MOSS, under penalties of perjury under the laws of the United States of America, state:

1.    I am the President and Business Manager of the Cement Masons Local 502 located in Bellwood, Illinois.

2.    I was appointed by Mr. John Dougherty, the President of the Operative Plasterers and Cement Masons International Association, to serve on the AFL-CIO Project Labor Committee and negotiate the Capital Development Board Standard Project Labor Agreement for the Illinois State House project in Springfield, Illinois.

3.    I signed the Capital Development Board Standard Project Labor Agreement on behalf of the Operative Plasterers and Cement Masons International Association.

4.    To the best of my knowledge and belief, the AFL-CIO Project Labor Committee was comprised of representatives from the international unions for the respective crafts.

Date: _April 13, 2007_

_____
DONALD MOSS

**SIGNATURE REDACTED**

"OFFICIAL SEAL"
Georgie L. Shepherd
Notary Public, State of Illinois
My Commission Exp. 05/11/2009

**SIGNATURE REDACTED**

EXHIBIT
1

E-FILED
Monday, 26 November, 2007  02:55:50 PM
Clerk, U.S. District Court, ILCD

Not Reported in F.Supp.2d, 2003 WL 1903991 (N.D.Ill.), 30 Employee Benefits Cas. 2119

Motions, Pleadings and Filings

United States District Court,
N.D. Illinois, Eastern Division.
TRUSTEES OF THE GLAZIERS, Architectural Metal and Glass Workers Local Union No. 27 Welfare and
Pension Funds, Plaintiffs,
v.
GLASS MASTERS LTD., an Illinois corporation involuntarily dissolved and Peter Gibson, Individually
and d/b/a Glass Masters Ltd ., Defendants.
No. 02 C 3503.
April 17, 2003.

*MEMORANDUM OPINION AND ORDER*

LEINENWEBER, J.

**\*1** The plaintiffs are fiduciaries and plan sponsors of the Glaziers, Architectural Metal and Glass Workers Local Union No. 27 Welfare Fund and Pension Fund (respectively, the "Funds"). They bring this action under ERISA to recover delinquent contributions and other amounts the Defendants allegedly owe under the collective bargaining agreements and trust agreements to which defendants are signatories. The defendants are a dissolved corporation and its incorporator, Peter Gibson, (collectively, "Glass Masters") who continues to operate the business as a d/b/a and is therefore liable for its obligations. 805 ILCS 5/3.20.

*BACKGROUND*

Glass Masters has bound itself to successive Collective Bargaining Agreements ("CBAs") with the Glaziers' Local beginning in 1994 and extending through June 2003. In October 1997, Glass Masters executed a Collective Bargaining Agreement with an Ironworkers Union local. Less than a year later, in July 1998, Glass Masters executed a new CBA with the Glaziers' Local. The Glazier CBA bargaining unit encompasses employees who perform glazing work, and Glass Masters contends that the Iron Workers' CBA does also. Gibson admits that the CBAs have overlapping coverage for Glazing work but contends that the CBAs give him the right to select which Union is to do the work.

The plaintiffs' auditor conducted a fringe benefit compliance audit with respect to two jobs Glass Masters performed during the period from January 1, 1999 through July 31, 2002. The two jobs included work entirely within the geographic coverage of the Glaziers CBA. Eighty-five to ninety percent of the work under the audit was clearly work covered by the Glaziers' CBA. ("Article 6 Classification/Scope of Work, Section 1. It is mutually understood and agreed that none but Journeyperson Glaziers or Apprentices will be employed on the following classifications: general glazing, ..."). The remaining fifteen percent apparently involved the installation of pre-glazed glass or metal work which is not covered work under the CBA. No contributions were made by defendants for the glazing work for which plaintiffs seek recovery in this suit, apparently because Glass Masters believed it had the right to assign glazing work to the Iron Workers Union. Glass Masters asserts that it made the required contributions to the Iron Worker Funds, corresponding to the plaintiffs' Funds in this case, and therefore need not contribute to the plaintiffs' Funds. The nub of the dispute therefore is whether the assignment of glazing work to the Iron Workers will excuse Glass Masters from making contributions to the Glazier Funds for the same work, even though it is covered work under the Glazier CBA.

EXHIBIT
2

## DISCUSSION

Section 515 of ERISA obligates an employer to make contributions to a plan to which it is contractually obligated. Defenses which might exist between the employer and the union, which are not apparent on the face of the written agreement, are not binding on the Funds, which has a status as a holder in due course. Therefore if the work done by defendants' employees is work that is cognizable under the Glazier CBA, the defendants are required to make contributions for the work, unless it is apparent otherwise from the face of the agreement. _Central States v. Gerber Truck Service, Inc ., 870 F.2d 1148, 1153 (7th Cir.1989)_ (en banc). An employer may not choose persons to perform covered work which has the effect of excluding persons covered by the collective bargaining agreement and thereby avoiding the obligation to make contributions. The Funds claims are based on contracts and not principles of labor law and cover whole bargaining units not just the members of the particular union. _Moriarty v. Larry G. Lewis Funeral Directors, Ltd., 150 F .3d 773, 776 (7th Cir.1998)_. In other words, if the CBA provides that Glaziers are to perform glazing work, an employer cannot avoid the fund obligations by assigning work to non-union members or members of another union. Therefore, the question is: is the work performed covered work under the relevant CBA? If so, contributions are due; if not, no payment is required.

**\*2** Glass Masters have admitted that the audited work is covered by the Glazier CBA in its response to the Funds' Local Rule 56.1 statement and in its responsive brief. Since the work involved glazing it would be hard to deny. Therefore pursuant to the CBA the Funds became obligated to cover the employees whether they are members of the Glaziers' Union or not. _Larry G. Lewis, Id._ It is unfortunate that Glass Masters has apparently become obligated to contribute to the Funds of both unions for the disputed work but it has only itself to blame. Glass masters entered into CBAs with two unions apparently having jurisdiction to perform glazing work, without designating in the CBAs which union was to perform the work. The Funds cannot be expected to divine which union Glass Masters would favor. Joint jurisdiction to perform specific work does not amount to a jurisdictional dispute. _Chicago District Council of Carpenters Pension Fund v. Faith Builders, Inc., No. 00 C 1036, 2001 WL 99839 at \*4 (N.D.Ill. Jan. 30, 2001)_. Even if it did rise to the level of a jurisdictional dispute, it would not affect the right of the Funds to recover because NLRB defenses are normally not available to defeat an ERISA collection action. _Martin v. Garman, 945 F.2d 1000, 1005 (7th Cir.1991)_.

## CONCLUSION

The Court therefore finds that the Funds are entitled to Summary Judgment and since Glass Master does not dispute the hours and contribution levels, judgment is entered in favor of the Funds in the amount of Eighty-five Percent (85%) of the sums shown due by the audit.

IT IS SO ORDERED.

N.D.Ill.,2003.
Trustees of Glaziers v. Glass Masters Ltd.
Not Reported in F.Supp.2d, 2003 WL 1903991 (N.D.Ill.), 30 Employee Benefits Cas. 2119

Motions, Pleadings and Filings (Back to top)

• 2003 WL 23818304 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendant's Motion to Supplement the Record (Jun. 25, 2003) 📄 Original Image of this Document (PDF)
• 2003 WL 23818300 (Trial Motion, Memorandum and Affidavit) Movant's Response to Defendant's Statement of Additional Facts (Apr. 4, 2003) 📄 Original Image of this Document (PDF)
• 2003 WL 23818292 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Defendants' Response to Plaintiffs Motion for Summary Judgment (Apr. 2, 2003) 📄 Original Image of this Document with Appendix (PDF)
• 2003 WL 23818296 (Trial Motion, Memorandum and Affidavit) Plaintiffs Response to Defendants' Local Rule 56.1 Statement of Additional Material Facts as to Which the Defendants Contend There is

no Genuine Issue (Apr. 2, 2003) 🔲 Original Image of this Document (PDF)
- 2003 WL 23818290 (Trial Pleading) Defendants' Answer to Plaintiffs' Motion for Summary Judgment (Feb. 28, 2003) 🔲 Original Image of this Document with Appendix (PDF)
- 2002 WL 32677714 (Trial Motion, Memorandum and Affidavit) Memorandum in Response to Plaintiffs' Complaint (Jun. 5, 2002) 🔲 Original Image of this Document with Appendix (PDF)
- 2002 WL 32677705 (Trial Pleading) Complaint (May 15, 2002) 🔲 Original Image of this Document with Appendix (PDF)
- 1:02CV03503 (Docket) (May. 15, 2002)

END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.