**E-FILED**
Monday, 10 December, 2007  10:12:25 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| OPERATIVE PLASTERERS' AND CEMENT MASONS 'LOCAL #18 ANNUITY FUND, OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 PENSION FUND and CEMENT MASONS' LOCAL #18, AREA #539 APPRENTICESHIP AND TRAINING FUND, | ) ) ) ) ) ) ) ) | |
| Plaintiffs | ) ) | |
| vs. | ) ) ) | No. 06-CV-3232 |
| J. P. PHILLIPS, INC., | ) ) ) | |
| Defendant and Third Party Plaintiff, | ) ) ) ) ) | |
| OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA, AFL-CIO, LOCAL #18 | ) ) ) ) ) ) | |
| Third Party Defendant. | ) ) ) | |

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS CROSS-MOTION FOR
SUMMARY JUDGMENT

<u>Preliminary Statement</u>

NOW COMES Defendant, J. P. PHILLIPS ("JPP"), by its attorneys, and herein files its combined response to additional material facts alleged by Plaintiffs and Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment.

<u>RESPONSE TO ADDITIONAL MATERIAL FACTS ALLEGED BY PLAINTIFFS.</u>

1.      Paragraph A is undisputed.

2.      Paragraph B is disputed.

3.      Paragraph C is undisputed.

Comments on Plaintiffs' Response with Respect
<u>To Undisputed and Additional Material Facts.</u>

Plaintiffs dispute the materiality of the overwhelming number of facts set forth as undisputed in JPP's cross motion.  But they do not dispute the accuracy of those factual assertions, which must, therefore, be deemed undisputed.  Plaintiffs' basis for characterizing these facts as immaterial is that Plaintiffs' claims are based on contracts and not principles of labor law. Plaintiff misconceives the legal principle involved, and in any event, does not provide a basis for denial of JPP's cross-motion for summary judgment.  Apparently Plaintiffs believe that only the existence of the PLA is material and that it suffices to entitle Plaintiffs to judgment.  JPP addresses that contention below.

As to additional fact A, although the Plaintiffs are separate entities from the OPCMIA and its affiliated locals, the Plaintiffs' alleged rights derive exclusively from the collective bargaining agreements of OPCMIA and its local affiliates, and those rights

are very much implicated by actions of the OPCMIA and proceedings to which it was party, including actions at the national level which bind its local affiliates.

As to additional fact B, even though OPCMIA may have designated Mr. Noll as a representative for this PLA is immaterial. As the PLA itself states at its outset, the union parties to the PLA are not international unions, but their local affiliates, and the agreement itself covers but a single project. (See Exh. 1 to third party defendant's motion.) Moreover, although some of the signatories are identified as "International Representatives", several others are identified solely by their local office or position, including the Elevator Constructors, IUOE State Council, Boilermakers, Sheet Metal State Council, and Teamsters. James Allen, the Bricklayers signatory, is not the President of the International Union. He is President of BAC Local 21 of Chicago, and the Chicago area District Council. Declaration of Timothy Driscoll in Support of Defendant's Cross-Motion for Summary Judgment ("Driscoll Dec.") ¶ 3.

As to additional Fact C, JPP did participate in the PLA Arbitration. It is also true and undisputed, however, that the OPCMIA and OPCMIA Local 18 through its parent International, participated in both the 2004 Plan Article X Arbitration and the 2006 Plan Arbitration proceeding before Arbitrator McMahon on this very project. Neither the participation of JPP in the PLA Arbitration nor the participation of JPP and both BAC and OPCMIA in the two Plan Arbitrations determines which of the two conflicting awards trumps the other. That remains the legal issue dispositive of this case.

## ARGUMENT

1.    The basic issue presented in this case is which of the two directly conflicting awards supercedes the other.

As demonstrated in our principal Memorandum supporting JPP's motion to dismiss the complaint, the provisions of a Plan established by the Building and Construction Trades Department and all its affiliated International Unions, and expressly made binding upon all local affiliates, is the supreme jurisdictional dispute resolution forum in the unionized construction industry.  It is the only forum that can achieve a permanent, ongoing and uniform body of decisions under a set of known, published standards, offering both consistency of treatment and industrial peace throughout the industry.

2.    JPP shall deal below with the contentions raised by Plaintiffs in their opposing Memorandum.  Equally important, however, are the points raised in JPP's Memorandum to which Plaintiffs' opposing papers do not even attempt to respond.  They include the following:

a) In their motion to dismiss the third-party complaint, third party defendants (closely allied with plaintiffs and represented by the same counsel) premised their claim of PLA superiority over the Plan on the proposition that because the PLA was entered into after the Plan had been established, it must be deemed to have extinguished the applicability of the Plan.

b)  Point III of JPP's Memorandum is devoted to the 2004 Plan award decreeing that in all future jurisdictional disputes over plastering and cement finishing work between BAC and OPCMIA, the employer's assignment of the work shall be dispositive.

OPCMIA participated fully in that arbitration, and its President lauded the Award. Plaintiffs' Memorandum neither responds to this Point nor mentions the 2004 Arbitration proceeding and Award.

c) On page 9, at the conclusion of their Memorandum, Plaintiffs assert that "Defendant cites no case law for the proposition that the Plan arbitration award has precedence over the Zipp Decision." This is flatly wrong. At p. 8, of JPP's Memorandum in support of JPP's summary judgment motion cites three cases holding that an award under the national Plan is entitled to precedence over a conflicting award under a local agreement, based on reasons equally applicable to the instant case. Sheet Metal Workers Intern. Ass'n v. Helgesteel Corp., 507 F.2d 1053, 1058 (7th Cir. 1974; Glaziers' Local Union No. 1204 v. PPG Industries, Inc., 572 F.Supp. 1092, 1092-93 (E.D. Wis. 1983); Laborers Int. Union Local 1440 v. Great Lakes Constr. Corp., 484 F. Supp. 1300 (E.D. Wis. 1980). Plaintiffs' Memorandum neither mentions nor distinguishes these decisions.

We now address the arguments that Plaintiffs' Memorandum does assert.

3. Plaintiffs cite cases requiring an employer who enters into collective agreements with two unions covering the same or overlapping work jurisdiction to pay fringe benefit contributions required under both agreements. Unlike the instant case, none of these cases involvedan arbitration decision or any other adjudication, awarding the work to either organization.

This case falls squarely within the Seventh Circuit's statement that an employer faced with this dilemma can "avoid paying double...by getting an agreement or a pre-work resolution of the dispute." Glaziers Fund v. Gibson, 99 Fed Appx 740 (7th Cir.

2004).[1] The <u>Gibson</u> decision appears to be the last word from the Seventh Circuit on the "double payment" issue.

Plaintiffs seek to distinguish <u>Gibson</u> on the ground that here "there was no pre-work agreement between JPP and Local 18 regarding plastering." But that omits the critical portion of <u>Gibson</u>. The Court said double payment could be avoided by an agreement "<u>or</u> a pre-work resolution of the dispute." (Emphasis supplied). The two terms are in the disjunctive; JPP did not need to obtain OPCMIA Local 18's agreement, for it did obtain a pre-work resolution of the dispute, through the Plan arbitration awards.[2]

4.    Even apart from the existence here of two arbitral resolutions of the dispute, the 2004 and 2006 Plan awards, the facts here are significantly different from those in the cases on which Plaintiffs rely. In those cases, a contractor knowingly entered into bilateral collective bargaining agreements with two unions covering overlapping work. The Courts reasoned that the employer's dilemma was of its own making. Here, to the contrary, after the NLRB election in which JPP's employees voted for Bricklayers, that union was certified by the NLRB as exclusive bargaining representative for JPP projects throughout the United States for employees working out of JPP's office. Faithful

---

[1]    While this appellate decision has a nonprecedential disposition, the logic is flawless and should be adopted by this Court. See <u>Davenport v. Northrop Grummin Corp.</u>, Slip op. 2007 WL 2608556 (N.D. Ill.)

[2] At p. 5, plaintiffs' Memorandum asserts that the dispute arose after the work had begun. No evidence of any kind has been submitted in support of that assertion. Defendant's attached declaration of Michael Pilolla is to the contrary. Declaration of Michael Pilolla in Support of Defendant's Cross-Motion for Summary Judgment ("Pilolla Dec.") ¶ 3-4. Moreover, no such claim can conceivably be made as to the 2004 Plan award making employer assignment dispositive of any jurisdictional dispute between these same two unions on the very type of work performed on the State Capitol project.

to its statutory duty, JPP entered into a collective bargaining agreement with Bricklayers. It did not enter into an agreement with OPCMIA or its locals.

Plaintiffs' Memorandum repeatedly refers to JPP's participation agreement in the PLA. JPP would not have been able to bid on the State Capitol job unless it signed a participation agreement. In doing so, however, JPP knew that the Bricklayers union, its sole contract party, was also a signatory party to the PLA. More than that, in signing the PLA, JPP inserted in the key blank space "BAC",[3] obviously referring to Bricklayers by their familiar initials. (see Exh. 1 to third party defendant's motion for summary judgment.) JPP openly proclaimed that by signing the participation agreement, JPP was agreeing to be bound to the BAC's agreement. It made no blanket commitment to be bound by any other union's agreement. If the sponsors of the PLA deemed that limitation unsatisfactory, it was up to them to insist that JPP sign a participation agreement without the specific reference to BAC. They did not. This is a fatal flaw.

In short, even in its participation agreement, JPP did not unambiguously agree to be bound by an OPCMIA contract or pay any OPCMIA fund contributions. By its actions JPP was faithful to the NLRB certification obligating it to recognize only BAC as exclusive representative of its plasterer employees. Absent an unambiguous commitment, a "double payment" case by the funds whose union did not perform the work must fail.

5.    Plaintiffs assert (p. 3) that their claims are based on contract law not labor law. If by that they mean that the contracts must be viewed in isolation, divorced from any consideration of labor law principles, then they are simply wrong. The Supreme

---

[3]   "BAC" means Bricklayers and Allied Crafts.

Court held precisely the contrary in <u>Transportation Communication Employees Union v. Union Pacific Railroad Co.</u>, 385 U.S. 157, 160-161 (1966), quoted at p. 9 of our Memorandum in support of JPP's motion.  Moreover, <u>Glaziers Fund v. Gibson</u>, <u>supra</u>, which stated that the previous resolution of a jurisdictional dispute will relieve the prevailing employer of any obligation of double payment, was itself a suit by fringe benefit funds.

6.     <u>Glaziers Fund v. Gibson</u>, therefore, as well as the other cases cited in  the JPP Memorandum, dispose of plaintiffs' related erroneous contention (p. 8) that because they are separate entities from the OPCMIA union itself, the Plan arbitration awards are irrelevant to their collection suit.  Plaintiff  have no rights to collect any contributions from any employer, apart from those conferred by the OPCMIA's collective bargaining agreements.  And if it is held, as it has been in two Plan proceedings to which OPCMIA was party, that OPCMIA has no right to perform the disputed work and that another union's members are awarded the work under that union's agreement, then the OPCMIA Funds have no entitlement to collect double contributions from that employer.

In arguing that their separate identity as employee benefit funds insulates them from the plan arbitration awards, Plaintiffs misconceive the force and impact of the two related <u>Gundle</u> cases which Plaintiffs cavalierly dismiss as "a labor law case" (pp. 4-5).  In <u>Roofers Local 30 v. Gundle Lining Construction Corp.</u>, 1 F.3d 1429 (3d Cir. 1993), the suit was to enforce a Roofers arbitration award, including payment of "benefit fund contributions required by the labor contract."  1 F.3d at 1430.  Both the facts and relief sought parallel those herein.  There, however, an NLRB jurisdictional award under Section 10(k) of the NLRA – clearly a "labor law" event – awarded the work to another

union. The Roofers contended, as do Plaintiffs herein, that there is a critical distinction between performing the work and seeking payment for the work. The Third Circuit rejected that claimed distinction as "ephemeral." 1 F.3d at 1427. Here the barriers to Plaintiffs are the two Plan arbitration awards; and Plaintiffs' contention that as entities separate from the Union, this so-called "labor law issue" has no relevance to their claim, is squarely refuted by Gundle.

7.      At page 7, Plaintiffs' Memorandum quotes the PLA provision that the PLA prevails over any other "agreement between the Contractor and the Union", urging that this clarifies the parties' intent not to defer to the Plan. The argument fails on more than one count. First, the Plan is not an "agreement" as that term is used in the quoted PLA provision. Second, the Plan is certainly not an agreement between a Contractor [on the State Capitol project] and the Union. Third, as Plaintiffs' own Memorandum states at the bottom of p. 7, the quoted PLA provision refers to local collective bargaining agreements incorporated by reference in the PLA. And fourth, for reasons set forth above and in JPP's principal Memorandum, and confirmed by BCTD President Sullivan's letter (Driscoll Dec., Exh. 1), the parties to the PLA lacked power to ignore or nullify the Plan arbitration procedures in a dispute clearly covered by those procedures.

8.      Plaintiffs' Memorandum (p. 7) relies on Huber, Hunt & Nichols, Inc., 282 F.3d 446 (9th Cir. 2002), as did their previous Memorandum. That case is inapposite for the reasons set forth in JPP's Memorandum (pp. 9-10), which we will not repeat here.

9.    Plaintiffs' Memorandum concludes its Point C, p. 8, with the assertion that "the Plan had no jurisdiction in this matter and that the McMahon decision is wrong." Yet five lines earlier, it quotes a letter from the OPCMIA International Union, submitted by defendant as an Exhibit, acknowledging that "For purposes of the Plan's jurisdiction" (emphasis supplied)(thereby acknowledging that the Plan had jurisdiction) "OPCMIA acknowledges that the Zipp decision has no force and effect." That is precisely what Arbitrator McMahon held and the federal District Court in its confirmation Order (to which OPCMIA consented) recited.

10.    As in their earlier submission, Plaintiffs argue that the unconfirmed Zipp Award must be given effect in this case because under Illinois law, it became final after 90 days. Surely, there can be no claim that the conflicting McMahon award, which was confirmed by the federal court, lacks standing as a final award. Moreover, the McMahon award, which specifically rejected the enforceability of the Zipp award, was rendered within a few days of the Zipp award; and it, too, has not only never been vacated, it has been judicially confirmed.

At best, from Plaintiffs' standpoint, there are two final awards, producing diametrically opposed conclusions. Therefore, as stated at the outset of this Memorandum, the issue now before the Court is which takes precedence over the other. For the reasons stated herein and in JPP's previous Memorandum, we urge that the Plan's awards prevail.

<u>CONCLUSION</u>

For all the foregoing reasons, we respectfully urge that Defendant J. P.

Phillips, Inc.'s motion for summary judgment dismissing the complaint be granted.

Respectfully submitted,

**J.P. Phillips, Inc.**


By:    Stanley E. Niew
        One of its Attorneys


STANLEY E. NIEW
NIEW LEGAL PARTNERS
600 Hunter Drive, Suite 310
Oak Brook, Illinois 60523
(630)586-0110 phone
(630)586-0120 fax
Attorney #2053721

**E-FILED**
Monday, 10 December, 2007   10:16:21 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 PENSION FUND and CEMENT MASONS' LOCAL #18, AREA #539 APPRENTICESHIP AND TRAINING FUND, <br><br>        Plaintiffs, <br><br>   v. <br><br> J. P. PHILLIPS, INC., <br><br>        Defendant and <br>        Third Party Plaintiff, <br><br> OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA, AFL-CIO, LOCAL #18, <br><br>        Third Party Defendant. | No. 06-CV-3232 <br><br><br> **DECLARATION OF MICHAEL PILOLLA IN SUPPORT OF DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

MICHAEL PILOLLA, under penalty of perjury, states the following:

I am the owner of JP Phillips, Inc. ("JPP"), a plastering contracting firm based in the Chicago area, which performs work across the Midwest. My company has been engaged in the plastering industry for over 54 years and we have employed both BAC plasterers and OPCMIA plasterers during this period. My company employed over 100 plasterers in 2003. As such I am familiar with industry practice throughout the country and the disputes relating to BAC and OPCMIA.

2.      I make this Declaration in support of Defendant JPP's Reply Brief in Support of its Motion for Summary Judgment.

3.      An impediment to job progress claim and a jurisdictional dispute claim were filed before the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (the "Plan") on August 1, 2006.

4.      JPP was not mobilized on the Core Construction State Capital Job until after August 1. JPP employed two (2) plasterers at the Core Construction job on August 14, 2007. Those plasterers left that day and no plasterers were at the job until August 21, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  12-6-07                                    _____
                                                                  Michael Pilolla

2

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

OPERATIVE PLASTERERS' AND
CEMENT MASONS' LOCAL #18
ANNUITY FUND, OPERATIVE
PLASTERERS' AND CEMENT MASONS'
LOCAL #18 PENSION FUND and
CEMENT MASONS' LOCAL #18,
AREA #539 APPRENTICESHIP AND
TRAINING FUND,

        Plaintiffs,

    v.

J. P. PHILLIPS, INC.,

        Defendant and
        Third Party Plaintiff,

OPERATIVE PLASTERERS' AND CEMENT
MASONS' INTERNATIONAL ASSOCIATION
OF THE UNITED STATES AND CANADA,
AFL-CIO, LOCAL #18,

        Third Party Defendant.

No. 06-CV-3232

**DECLARATION OF
TIMOTHY J. DRISCOLL
IN SUPPORT OF
DEFENDANT'S REPLY BRIEF
IN SUPPORT OF ITS CROSS-MOTION
FOR
SUMMARY JUDGMENT**

TIMOTHY J. DRISCOLL, under penalty of perjury, states the following:

1.     I am a member of the International Union of Bricklayers and Allied Craftworkers ("BAC") and have been for over 22 years. I am also BAC's Director of Trade Union Jurisdiction. As such, I am in charge of disputes arising under the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (the "Plan") and am generally familiar with jurisdictional matters involving the construction unions comprising the Building and Construction Trades Department, AFL-CIO ("BCTD").

2.      I make this Declaration in support of Defendant J. P. Phillips, Inc.'s Reply Brief in Support of its Cross-Motion for Summary Judgment.

3.      James Allen is President of BAC Local 21, Illinois, and of BAC District Council 1 of Chicago. He is not President of the International Union.

4.      I serve as BAC's representative to the Project Review Committee of the Building & Construction Trades Department, AFL-CIO ("BCTD"). This Committee, comprised of International Union Representatives of all the affiliate unions of the BCTD, reviews project labor agreements that are submitted by Local Building Trades Councils for approval by the National BCTD. The Capital Development Board project labor agreement for the Capitol Building in Springfield, Illinois was neither submitted, nor approved, by the Project Review Committee of the BCTD.

5.      Attached to this Declaration as Exhibit 1 is a true and correct copy of a letter dated August 15, 2006 from Edward Sullivan, President of the BCTD, to John J. Flynn, President of BAC. This letter is maintained in my files in the regular course of business.


I declare under penalty of perjury that the foregoing is true and correct.


Date:  12/5/07                          _____
                                              Timothy J. Driscoll

2

EDWARD C. SULLIVAN, President
SEAN McGARVEY, Secretary-Treasurer

JOHN J. DOUGHERTY, 1st Vice President
MICHAEL J. SULLIVAN, 2nd Vice President
JOHN J. FLYNN, 3rd Vice President
DANA A. BRIGHAM, 4th Vice President

EDWIN D. HILL, 5th Vice President
JOSEPH J. HUNT, 6th Vice President
JAMES A. GROGAN, 7th Vice President
JAMES A. WILLIAMS, 8th Vice President
NEWTON B. JONES, 9th Vice President
WILLIAM P. HITE, 10th Vice President
KINSEY M. ROBINSON, 11th Vice President



# Building and Construction Trades Department

AMERICAN FEDERATION OF LABOR—CONGRESS OF INDUSTRIAL ORGANIZATIONS
815 SIXTEENTH ST., N.W., SUITE 600 • WASHINGTON, D.C. 20006-4104

(202) 347-1461          www.BCTD.org          FAX (202) 628-0724

August 15, 2006

John J. Flynn, President
International Union of Bricklayers
   and Allied Craftworkers
1776 Eye Street NW
Washington, DC   20006

Dear President Flynn:

We have reviewed the project labor agreement covering certain construction work at the Capitol Building in Springfield, Illinois (CDB Project No. 006-100-009) that you forwarded to my office.  This PLA has never been formally sent to the Department by any Council in Illinois for review, but it has been discussed at the PRC meetings.

Please be advised that this project labor agreement does not meet the guidelines established by the Building and Construction Trades Department, nor has it been approved by the Department's Project Review Committee.

Specifically, Article X of the Department's Constitution, and Article XII, Section 5, of the uniform Constitution and Bylaws to Govern Local Councils, make it clear that all jurisdictional disputes are to be processed through the Plan for Settlement of Jurisdictional Disputes in the Construction Industry.   The national Plan does not recognize the jurisdictional disputes process contained in the above-referenced project labor agreement.   Rather, the national Plan is the only jurisdictional disputes procedure authorized by the Building and Construction Trades Department.

Please feel free to contact this office if we can provide further assistance in this matter.

With kind personal regards, I am

Sincerely and fraternally,

Edward C. Sullivan
President

ECS/wcy

EXHIBIT 1