**E-FILED**
Wednesday, 27 August, 2008 05:01:40 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL #18 ANNUITY FUND, OPERATIVE PLASTERERS' AND CEMENT MASONS' LOCAL # 18 PENSION FUND, and CEMENT MASONS' LOCAL # 18 AREA #539 APPRENTICESHIP AND TRAINING FUND, <br><br> Plaintiffs, <br><br> v. <br><br> J.P. PHILLIPS, INC, <br><br> Defendant and Third Party Plaintiff, <br><br> v. <br><br> OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA, ALF-CIO, LOCAL #18, <br><br> Third Party Defendant. | NO. 06-3232 |

## OPINION

RICHARD MILLS, U.S. District Judge:

Plaintiffs, a trio of union-administered multiemployer benefit funds ("Funds"), seek to recover fringe benefit contributions allegedly owed by Defendant J.P. Phillips, Inc. ("JPP"). JPP denies any obligation to pay contributions to the Funds, arguing that a prior arbitration already resolved this dispute. JPP has also filed a third-party complaint against Third Party Defendant Operative Plasterers' and Cement Masons International Association of the United States and Canada, AFL-CIO, Local #18 ("Local 18") for breach of contract.

JPP now seeks summary judgment against both the Funds and Local 18 (collectively, "OPCMIA"). Local 18 seeks summary judgment on the third-party complaint.

Summary judgment is granted in favor of JPP on both claims. Local 18's motion for summary judgment is denied.

# I.  BACKGROUND

## A.  Overview

Sandwiched between the conflicting demands of competing unions, JPP finds itself entangled in the fallout of a jurisdictional dispute. Hired by CORE Construction to perform certain plastering work at the Illinois Capitol, JPP employed workers affiliated with local branches of the International Union of Bricklayers and Allied Craftworkers' AFL-CIO ("BAC"). JPP paid these employees their regular wages and benefits, as required under its Collective Bargaining Agreement ("CBA") with the BAC Locals.[1]

Soon after work began, Local 18 objected to JPP's assignment of the plaster work to BAC-represented employees rather than to its union. Local 18 claimed that JPP, by signing the Capital Development Board Standard Project Labor Agreement ("PLA"), had obligated itself to comply with Local 18's CBA and therefore had to assign the plastering work to Local 18. For

---

[1]To dispel any notions of malfeasance, JPP notes that the contributions made to the BAC-related fringe benefit funds exceeded those now demanded by Local 18.

3

relief, Local 18 initiated arbitration procedures under the PLA. JPP concurrently invoked the arbitration procedures set out in the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry ("National Plan"), as required by the National Plan and Local 18's CBA. Ultimately, this sequence of events resulted in different arbitrators reaching antipodal conclusions.

B.   National Plan Arbitration

JPP relies on an arbitration and court order entered under the auspices of the National Plan. However, before explicating the National Plan provisions, some background detail is required.

According to the BAC's Director of Trade Union Jurisdiction, the BAC and OPCMIA unions "are unique in the construction industry" since, for the last century, "[e]ach union has core charter jurisdiction over the same two crafts of plasterers and cement masons . . . ." (Driscoll Aff. ¶¶ 4-5.) Whereas BAC represents sundry trades, OPCMIA only covers these two crafts. To accommodate this overlap, the BAC and OPCMIA observed various agreements delimiting the boundaries of each union's jurisdictional

domain. These agreements were, however, abrogated in 1998, resulting in jurisdictional discord.

In order to quell this type of inter-union strife, the Building and Construction Trades Department ("BCTD") of the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") had previously established the National Plan. As stated in the Preamble, the National Plan was designed for "handling of disputes over work assignment without strikes or work stoppages. . . ." Article I, entitled "Scope of Application" provides that employers are subject to the National Plan through stipulation, affiliation, or CBA; unions are covered through affiliation with the Building and Construction Trades Department, AFL-CIO. At all relevant times, JPP, BAC, and OPMCIA were bound by the National Plan. Further, the Local 18's CBA contained provisions requiring National Plan arbitration and compliance with any National Plan awards.

The National Plan contains two vehicles for dispute resolution. First, Article V specifies procedures for resolving individual jurisdictional disputes. Second, Article X creates a three-member "National Arbitration

Panel" ("NAP") capable of granting more comprehensive relief. Such relief may be obtained in cases where a separate committee determines that National Plan members are involved in a "repetitive" dispute. The parties are then given an opportunity to settle the issue; failing that, the matter is referred to the NAP for resolution, whose decisions "shall be immediately accepted and complied with by the disputing unions." As discussed below, both Article V and Article X decisions have relevance.

    C.    **Project Labor Arbitration**

Both JPP and Local 18 were also obligated to abide by the terms of the PLA. Article I of the PLA describes its purpose as "promot[ing] efficiency of construction operations and provid[ing] for peaceful settlement of labor disputes without strikes or lockouts, thereby promoting the public interest in assuring the timely and economical completion of the work." The PLA purports to incorporate a number of CBAs, but explains that "where the provisions of this Agreement are at variance with any other agreement between the Contractor and the Union, the language of this Agreement shall prevail." Article XII of the PLA provides rules for the

arbitration of jurisdictional disputes.

    D.    **Arbitration Awards**

Three awards have relevance here. First, in 2003, the National Plan's comprehensive Article X arbitration provisions were invoked to settle continuing jurisdictional disputes between the BAC and OPCMIA. This was the first Article X case in 25 years. On January 28, 2004, the NAP ruled that "[h]enceforth, all jurisdictional disputes between the BAC and the [OPCMIA] that are brought before the Plan shall be resolved in favor of the work assignment of the involved Employer." (Def.'s Mot. for Summ. J., Ex. K.) Pursuant to its obligations under the National Plan, OPCMIA agreed to comply with the decision. (Def.'s Mot. for Summ. J., Ex. A.)

Against this backdrop, Local 18 initiated the second relevant arbitration: the Zipp Arbitration. A hearing was held on August 8, 2006, and Arbitrator Zipp entered a bench decision in favor of Local 18. In an opinion issued two days later, Arbitrator Zipp explained his decision. First, he denied BAC's "motion for deferral to the National Plan's jurisdictional resolution procedure" because Article XXII of the PLA "set[] forth very

7

detailed procedures and criteria for an arbitrator to follow." Second, Arbitrator Zipp disregarded the NAP's decision under Article X of the National Plan (as well as the holding of another arbitrator), which determined jurisdiction according to assignment, and instead looked to the prevailing practice in Springfield, Illinois. Under this approach, he found that the plaster work should have been assigned to Local 18. (Compl., Ex. B.)

In response, JPP began the third arbitration, the McMahon Arbitration, by invoking Article V of the National Plan. On August 24, 2006, a hearing was held before Arbitrator John J. McMahon. McMahon determined that the present dispute fell under the prior Article X ruling and held that JPP's assignment of the work to the BAC Locals was proper. The McMahon Arbitration also explicitly rejected the Zipp Award. (Def.'s Mot. for Summ. J., Ex. F.)

Faced with conflicting awards, OPCMIA acknowledged that the McMahon Award controlled. Both unions then entered a consent decree, confirmed by the D.C. District court, affirming the validity of the National

Plan arbitration. The consent decree also acknowledged that rejection of the Zipp Arbitration was proper, because the decision was entered pursuant to "an unapproved local arbitration procedure." (Def.'s Mot. for Summ. J., Ex. H.)

### D. Funds' Collection Action

Brazenly undeterred by the parent union's acquiescence in the McMahon resolution and the district court's consent decree, the Funds filed suit in this Court seeking to recover fringe benefits based, in large part, on the Zipp decision. JPP responded by filing a third-party complaint against Local 18 for breach of the National Plan.

Local 18 now seeks summary judgment against JPP on the breach claim. JPP seeks summary judgment in its favor on the breach claim, as well as summary judgment against the Funds on the contributions claim.

## II. ANALYSIS

### A. Breach of Contract Claim against Local 18

JPP claims that the Local 18 breached the National Plan agreement by invoking and relying on non-Plan arbitration procedures. In response,

9

Local 18 claims that their invocation of the PLA's arbitration provisions was not a breach of the National Plan because the PLA, as the later executed agreement, controlled over any prior agreements to the contrary.[2] As such, Local 18 invites this Court to ignore all of the conflicting prior agreements and focus solely on the last executed document: the PLA. Labor law, however, does not countenance such a myopic review. Rather, the interpretation of the multifarious labor agreements before the Court requires consideration of "the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements." *Transp.-Commc'n Employees Union v. Union Pac. R.R. Co.*, 385 U.S. 157, 161, 87 S. Ct. 369, 17 L. Ed. 2d 264 (1966). Indeed, this wide-ranging inquiry is particularly necessary "when the agreement is resorted to for the purposes of settling a jurisdictional dispute over work assignments." *Id.*; s*ee Local 416, Sheet Metal Workers Int'l Ass'n (AFL-CIO) v. Helgesteel Corp.*, 507 F.2d 1053, 1057 (7th Cir. 1974).

---

[2]Local 18 also argues that JPP failed to timely set aside the Zipp arbitration. This argument is rather extraordinary, however, since a consent decree, confirmed by a federal district court, has already expressly invalidated the Zipp Award.

10

A number of opinions have asked the question before the Court: whether a local labor agreement trumps a conflicting national agreement. All have found the national agreements controlling. *Helgesteel*, 507 F.2d at 1056-58; *Glaziers' Local Union No. 1204 v. PPG Indus., Inc.*, 572 F. Supp. 1092 (E.D. Wis. 1983); *Laborers Int'l Union Local 1440 v. Great Lakes Constr. Co.*, 484 F. Supp. 1300 (E.D. Wis. 1980).

For example, in *Glazier's Local Union No. 1204*, the Glazier's Local, asserted that the respondent contractor had improperly assigned curtainwall erection work and sought an order compelling arbitration pursuant to the terms of the parties' CBA. 572 F. Supp. at 1092. The contractor objected, noting that the Glaziers' Local was an affiliate of the International Brotherhood of Painters and Allied Trades, which had "agreed on behalf of its affiliates to resolve interunion jurisdictional disputes before the Impartial Jurisdictional Disputes Board." *Id.* Under that agreement, the parties were prohibited from submitting jurisdictional disputes to other forums. *Id.* at 1093. Relying on *Great Lakes*, the court held that "[i]n light of this agreement and the prohibition against proceedings in forums other than the

IJDB, I conclude that the [CBA]'s arbitration provision does not supercede the plan for procedure before the IJDB." *Id.* at 1093.

Local 18 fails to offer any grounds for distinguishing *Helgesteel*, *Great Lakes*, or *Glazier's*. As such, this Court concludes that Local 18 breached the National Plan by relying on unsanctioned arbitration procedures.

## B.    ERISA Collection Action

JPP also seeks judgment on the Funds' claim for benefits, arguing that the National Plan arbitration has already determined that JPP properly assigned the disputed work to BAC.[3] The Funds argue that JPP raises a jurisdictional dispute, which cannot defeat an ERISA action.

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such

---

[3]JPP also argues that it never agreed to be bound by OPMCIA's CBA. In light of the arbitration award, the Court does not address this argument.

12

agreement.

29 U.S.C. § 1145. Courts have interpreted this rule to preclude employers from raising an assortment of affirmative defenses against multiemployer benefit funds, even if those same defenses would defeat a claim by the union. *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber*, 870 F.2d 1148, 1149 (en banc) ("The pension or welfare fund is like a holder in due course in commercial law, or like the receiver of a failed bank - entitled to enforce the writing without regard to understandings or defenses applicable to the original parties.").

The Funds argue that a jurisdictional dispute is one of the defenses barred by § 515. This argument, however, misses the mark. Contrary to the Funds' claims, JPP does not assert such a mere "jurisdictional defense." Instead, it relies on an arbitration award, and ultimately a consent decree, that *settled* a jurisdictional dispute.

Thus, the question is whether the defense of a settled jurisdictional dispute is barred by ERISA.[4] Unsurprisingly, the Funds cite no cases

---

[4]A majority of courts have concluded that a benefit fund may enforce an obligation despite a union's failure to invoke arbitration

allowing a benefit fund to ignore an adverse arbitration award entered under the auspices of a CBA or PLA. Indeed, the only case directly on point concludes the opposite: "[o]nce a union has lost a jurisdictional dispute, it cannot then turn around and seek . . . the payment of benefit fund contributions . . . ." *Cement Mason's Union Local No. 592 Pension Fund v. Zappone*, 501 F. Supp. 2d 714, 722 (E.D. Penn. 2007); *see also R.I. Carpenters Annuity Fund v. Trevi Icos Corp.*, 533 F. Supp. 2d 246, 252 (D.R.I. 2008) (criticizing union benefit fund for "using ERISA as a jurisdictional stalking horse").

This court agrees. While § 515 bars defenses based on undisclosed side agreements between the employer and union, *Cent. States, Se. & Sw.*

---

provisions. *R.I. Carpenters Annuity Fund v. Trevi Icos Corp.*, 474 F. Supp. 2d 326, 333 (D.R.I. 2007) (noting that "a compelling weight of authority suggests that . . . the failure, *ab initio*, to invoke an inter-union jurisdictional dispute resolution vehicle will not later bar a fund's ERISA claim for contributions for work assigned to members of a competing union."). *But see Carpenters Fringe Benefit Funds of Ill. v. McKenzie Eng'g*, 217 F.3d 578 (2000). Such a position presupposes that union arbitrations, if invoked, would be binding. *See R.I. Carpenters Annuity Fund*, 474 F. Supp. 2d at 334 ("[A]n employer may be placed at risk of double payment requirements for benefit fund contributions simply because one union fails (either intentionally or not) to exercise its jurisdictional dispute resolution rights against another trade union.").

*Areas Pension Fund v. Joe McClelland, Inc.*, 23 F.3d 1256, 1257-58 (7th Cir. 1994) (oral understanding); *Cent. States, Se. & Sw. Areas Pension Fund v. Transport, Inc.*, 183 F.3d 623, 628 (7th Cir. 1999) (written agreement), this defense was disclosed in the CBA and PLA, both of which contain arbitration provisions for the final and binding settlement of jurisdictional disputes. These provisions were invoked and a consent decree, overruling one and confirming the other, conclusively announced that Local 18 had no right to the work in question. The Funds cannot now enforce the contribution provisions of the CBA while ignoring provisions of the CBA and PLA that make this unfavorable arbitration award binding.[5]

### III. CONCLUSION

---

[5] This conclusion is further supported by the non-precedential decision of *Trustees of the Glaziers, Architectural Metal & Glass Workers Local #27 Welfare and Pension Funds v. Gibson*, 99 Fed. Appx. 740, 742 (7th Cir. Apr. 20, 2004) (unpublished), where the Seventh Circuit noted that "[t]he time to avoid paying double . . . [is] *before* the work [is] done by getting an agreement or a pre-work resolution of the dispute." If a resolution entered into pursuant to a valid agreement between the employer and the union were insufficient to preclude a later suit for contributions, it is hard to imagine what sort of "agreement" or "pre-work resolution" would suffice. In this case, JPP complied with *Gibson*: it sought immediate arbitration and ultimately prevailed.

<u>Ergo</u>, Local 18's motion for summary judgment [d/e 23] is DENIED, and JPP's cross-motion for summary judgment [d/e 24] is GRANTED. JPP will have twenty-one (21) days to file a statement concerning what damages, if any, it suffered from Local 18's breach.

IT IS SO ORDERED.

ENTERED:                                            August 27, 2008

FOR THE COURT:                           /s Judge Richard Mills
                                         United States District Judge